[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**MAY 19, 2003**
**THOMAS K. KAHN**
**CLERK**

No. 02-12820

D.C. Docket No. 96-10134-CV-JCP

MARY QUINN,

Plaintiff-Appellant,

versus

MONROE COUNTY,
JAMES L. ROBERTS, County
Administrator, Monroe County,
individually and in his official
capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(May 19, 2003)**

Before HULL, MARCUS and FARRIS[*], Circuit Judges.

FARRIS, Circuit Judge:

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

In this § 1983 action, Mary Quinn contends that she was terminated from her position as Library Director as retaliation for exercising her First Amendment rights. The district court granted summary judgment in favor of Monroe County and County Administrator James Roberts. We affirm in part, reverse in part, and remand.

## I

Plaintiff Mary Quinn began working for the Monroe County Library in August 1987, and became Library Director in January 1989. Between 1989 and 1993, the Monroe County Commissioners requested that the Library Administration look into opening a library branch in Big Pine Key. Quinn opposed the plan and shared her opinion with her direct supervisor, Peter Horton, who was in favor of opening the new branch. In June 1993, Horton gave Quinn a performance rating of 3.625 out of a possible 5, noting coworker and subordinate complaints against Quinn.[1] In August 1993, Quinn, as Library Director and with Horton's knowledge, wrote a position paper opposing the County's expenditure of funds to open a new branch of the library in Big Pine Key. During that month, she

---

[1]When he informed Quinn of her evaluation, Horton stated he had received ratings similar to hers.

presented the paper to the Monroe County Library Board, to Horton, and to a Monroe County Commissioner.

Defendant James Roberts became County Administrator for Monroe County in September 1993. In August 1994, Quinn was called to a meeting with Roberts and County Human Resources Employee Paula Rodriguez to address complaints by the Key West library staff against Quinn. As a plan to deal with the complaints, Quinn suggested that she be transferred from the Key West branch. She was subsequently transferred to the Stock Island library branch.

In March 1995, a Preliminary Audit Report by the Internal Audit Department of the Clerk of the Circuit Court alleged possible misappropriation of funds by Quinn. The State Attorney's Office conducted a criminal investigation but found no evidence of a missing donation, theft, or fraud. The questioned expenditure was a reimbursement for conference expenses. Quinn was in violation of County procedures by making the reimbursement in cash.

On May 18, 1995, Quinn attended a predetermination hearing in Roberts' office. Horton and Rodriguez attended. The allegations as to misappropriation of funds were discussed. On June 2, 1995, Quinn was summoned to Roberts' office and terminated from the Monroe County Library. She was handed a letter dated the day of the predetermination hearing that referred to: the conclusions of the

3

internal auditor, including that Quinn's mishandling of a check constituted "numerous violations of state and local laws and numerous County policies"; Quinn's creation of a Monroe County Library Trust Fund without the knowledge or authorization of Monroe County authorities, improper placement of herself as signatory on the account, and unauthorized withdrawals; Quinn's failure to cooperate, poor judgment, and ethical violations; and Quinn's improper submission of a travel voucher. In early June 1995, Roberts terminated Quinn's employment, after which termination Quinn received no pay or benefits.

Quinn appealed her termination to the Career Service Council. A three-day adversarial hearing was held in July 1997. In late-October 1997, the Council affirmed Quinn's termination. In its Final Order, the Council found, among other things: that the County clearly placed Quinn on notice "as to deficiencies in her performance;" that the County followed and complied with its own policies and procedures in terminating Quinn; that Quinn was not "cleared" by the State Attorney's Office report as to certain reimbursements and the opening of a bank account using a library donation (instead, the Career Service Council determined the report "simply means that no criminal charges were filed against Quinn"); that Quinn, as a department head, was subject to a higher standard of discipline and ethics; that Quinn was offered a voluntary demotion to Branch Manager at the Big

4

Pine Library; that Quinn violated certain provisions of Monroe County's Policies and Procedures Manual, which violations constituted just cause for her discharge; and that Quinn's "misconduct otherwise constituted just cause for discharge."

Quinn petitioned for certiorari review of the Council's decision at the Monroe County Circuit Court. In April 1998, the Circuit Court dismissed her petition because Quinn had failed to comply with the appellate rules by not providing the court with all relevant portions of the record on appeal, including the transcript of the Council hearing. In May 1998, Quinn filed an amended petition for certiorari, alleging her due process rights were violated because she never received notice of the charges for which she was terminated. In August 1998, the Circuit Court found that Quinn had failed to make a prima facie showing that the Council departed from the essential requirements of the law in determining the appeal of her dismissal and that the Council's decision was supported by substantial evidence. During these proceedings, Quinn never suggested that Roberts' reason to dismiss her constituted retaliation for her opposition to opening a new library branch.

On November 20, 1996, Quinn filed this 42 U.S.C. § 1983 claim in federal court, contending that her termination constituted retaliation for exercising her First Amendment right to oppose the opening of the new library branch.

Defendants have moved four times for summary judgment. Plaintiff filed a motion to set aside the final order granting summary judgment to Roberts because Defendants had erroneously mailed the Fourth Motion for Summary Judgment to a former address of the Plaintiff's counsel. The district court ruled as follows:

a. *Defendants' First Motion for Summary Judgment*
   i. Denied qualified immunity for Roberts;
   ii. Granted summary judgment for Monroe County because Roberts, the person who terminated Quinn, did not possess final policymaking authority sufficient to create municipal liability.
b. *Defendants' Second Motion for Summary Judgment*
   i. Referred motion to magistrate judge for report and recommendation, which recommended denial of summary judgment on the basis of collateral estoppel.
c. *Defendants' Third Motion for Summary Judgment (and Objections to Report and Recommendation)*
   i. Adopted Report and Recommendation in full, including the denial of summary judgment on the basis of collateral estoppel;
   ii. Denied summary judgment for Roberts *without prejudice*, permitting Quinn 60 days to amend complaint in light of *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999).
d. *Defendants' Fourth Motion for Summary Judgment*
   i. Granted summary judgment for Roberts, finding that he could not be held liable as a "decisionmaker" under *Stimpson*;
   ii. Declined to reach collateral estoppel because of the above holding, but did so without mentioning previous rejection of Defendants' collateral estoppel argument.
e. *Plaintiff's Emergency Motion to Set Aside the Order Granting Defendants' Fourth Motion for Summary Judgment*
   i. Denied the motion because plaintiff would have known about the motion if she had been more regularly examining the

6

docket and because the record showed that the decision was proper on the merits.

Quinn appeals the grants of summary judgment for Monroe County and Roberts.[2] Defendants do not cross-appeal the district court's denial of their Second Motion for Summary Judgment based on collateral estoppel and instead proceed as if the court never reached this issue. Defendants reasserted collateral estoppel in their Fourth Motion for Summary Judgment and now propose that collateral estoppel provides an additional basis to affirm the district court's order on their Fourth Motion for Summary Judgment.[3]

## II

There are three issues: (1) did the district court err by finding no municipal liability because Roberts was not the "final policymaker"; (2) did the district court err by finding Roberts not liable because he was not the "decisionmaker" in the

---

[2]At oral argument, Defendants abandoned their argument that we lacked jurisdiction to decide this case because plaintiff's notice of appeal was filed after the grant of summary judgment for Roberts but before the filing of the final judgment order, and because plaintiff failed to specifically mention an appeal of the grant of summary judgment for the County though she briefed the issue fully here. The first reason is simply wrong, *see* Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."), and the second reason is inconsequential given that plaintiff's brief was filed within the time specified by Fed. R. App. P. 4, and the variance is a mere technicality. *See Smith v. Barry*, 502 U.S. 244, 248-49 (1992).

[3]The district court has also proceeded as if it never decided the Second Motion for Summary Judgment. In the order on the Fourth Motion, the court stated, "[b]ecause this court has granted summary judgment on Roberts' substantive argument, it need not reach Roberts' theory of collateral estoppel."

7

termination determination; and (3) are plaintiff's claims nonetheless collaterally estopped. The district court was correct about the "final policymaker" issue, and incorrect about the "decisionmaker" issue. As to the thorniest question—collateral estoppel—we conclude that Quinn is not collaterally estopped from bringing this action against Roberts in his individual capacity.

## A.    Final Policymaker

Municipalities, such as Monroe County, cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Instead, municipalities may be held liable for the execution of a governmental policy or custom. *See id.* at 694. Municipal liability may arise with regards to an employment decision, such as a termination, provided that the decisionmaker "possesses *final authority* to establish *municipal policy* with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (majority opinion) (emphasis added) (footnote omitted). The Eleventh Circuit "has interpreted *Monell*'s policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Thus, "[f]inal policymaking authority over

8

a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Id.* at 1401; *see Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) (holding that mayor was not the final policymaker with respect to zoning decisions where the city charter provided that the city council could override the mayor's veto of zoning ordinances); *cf. Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (accepting concession that city police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager); *Martinez v. City of Opa-Locka*, 971 F.2d 708, 713-15 (11th Cir. 1992) (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review").

Quinn argues that County Administrator Roberts was the "final policymaker" with respect to her termination. This contention is unpersuasive. Roberts' decision to terminate Quinn was subject to meaningful administrative review by the Career Service Council. Pursuant to Florida Law, the Career Service Council has the authority to review termination appeals and "may order the reinstatement of said employee, with or without back pay, or otherwise amend, alter, sustain or reverse the decision of the employer." 1969 Fla. Laws ch. 69-1321 § 6. In Quinn's case, the Council afforded her a full adversarial and

9

evidentiary hearing, which lasted three days and during which the parties were each represented by counsel and had the opportunity to present and cross-examine witnesses. It then affirmed that Roberts had just cause to terminate Quinn. As detailed above, the Council rendered a decision with detailed findings of fact and conclusions.

Quinn can point to no cognizable defect in the proceedings, nor has she provided evidence that the Council approved any improper motive that Roberts may have had.[4] Quinn stands in the same place in relation to the Council and Roberts as the plaintiff did in *Scala*. *See Scala*, 116 F.3d at 1402-03. Because the Career Service Council has the power to reverse any termination decision made by Roberts, he is not a final policymaker with respect to termination decisions at the library. *See id.* at 1403.

## B. Official Decisionmaker

Although County Administrator Roberts was not the "final *policymaker*" with respect to Quinn's termination, he was clearly the official "*decisionmaker*" with respect to her termination. The district court did not distinguish between these two concepts. The "final policymaker" inquiry addresses who takes actions

---

[4]Quinn did not raise her retaliation claim against Roberts before the Career Service Council. As outlined in footnote 11, *infra*, Roberts was not a party to the proceedings before the Career Service Council or the Circuit Court.

10

that may cause the municipality (here, Defendant Monroe County) to be held liable for a custom or policy. The "decisionmaker" inquiry addresses who has the power to make official decisions and, thus, be held *individually* liable.

The district court relied upon *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999)*,* for the proposition that County Administrator Roberts was merely a biased intermediary who cannot be held liable for the Career Service Council's actions, because the Council, as the unbiased official decisionmaker, independently evaluated and affirmed Quinn's termination. In a similar vein, Defendants Monroe County and Roberts rely on *Stimpson* and argue on appeal that they are not liable because there is no causal link between alleged retaliatory animus of Roberts and Quinn's termination. Defendants assert that the Council conducted an independent review, after a full evidentiary hearing of Quinn's termination, and did not adopt or rubber stamp Roberts' termination decision.

The problem for the Defendants is that the factual circumstances in *Stimpson* were materially different from those here. In *Stimpson*, a police officer alleged that the city was motivated unlawfully when it fired her. *See Stimpson*, 186 F.3d at 1328. However, Alabama law unequivocally deprived the city of the power to discharge a police officer. *See id.* at 1331. Although the city could make recommendations, the authority to terminate employment rested solely with a

11

statutorily created civil service board. *See id. Stimpson* thus held that the city

could not be held liable for retaliation because the civil service board was, as a

matter of law, the actual decisionmaker, and there was no evidence that the board

was a mere conduit for the city's supposed discriminatory motive. *See id.* at 1331-

32.

As the Fifth Circuit recently noted, applying *Stimpson* to circumstances

such as Quinn's would answer the wrong question:

> In most "causal connection" cases, the determinative question is
> whether the discriminatory or retaliatory motive of a subordinate
> employee may be imputed to the titular decision-maker. A decision-
> maker may serve as the conduit of the subordinate's improper motive,
> for example, if he merely "rubber-stamps" the recommendation of a
> subordinate. *This case, however, poses the logically antecedent*
> *question how to identify the official decisionmaker.*

*Hitt v. Connell*, 301 F.3d 240, 248 (5th Cir. 2002) (emphasis added). In *Hitt*, the

plaintiff filed suit under § 1983 alleging a First Amendment retaliation claim

relating to his termination. In that case, Constable Connell dismissed the plaintiff

Hitt, who appealed his dismissal to the Bexar County Civil Service Commission.

After conducting its own independent inquiry, the Commission affirmed Hitt's

termination.[5]

---

[5]The Fifth Circuit determined that the commissioners were not motivated by any improper motive in reaching their decision.

12

The Fifth Circuit distinguished *Hitt* from *Stimpson* because Hitt's termination was effective upon Connell's order (without further review or approval of higher authority required) and because Hitt's appeal of the termination decision was subject to review only if he chose to appeal (i.e, review is not automatic). *Hitt*, 301 F.3d at 248.[6]

The Fifth Circuit then determined: (1) that Connell was the "decision-maker" for § 1983 purposes because Hitt's termination was effective upon Connell's order, with nothing further required; (2) that there was no causal connection between Hitt's constitutionally protected activity and the adverse employment action because the Commission was not the decision-maker; and (3) that, while the Commission is not statutorily required to act as a decision-maker as to each employee termination, it was the final policy-maker because,

---

[6]"Unlike a Texas school board, for example, a county civil service commission does not have express statutory responsibility to act as the final decision-maker with respect to individual employment decisions. The relevant statute requires only that each civil service commission 'adopt, publish, and enforce rules' regarding the selection of county employees; promotions, seniority, and tenure; layoffs and dismissals; disciplinary actions; grievance procedures; and similar matters." (citation to Texas statute omitted). *Hitt*, 301 F.3d at 248.

13

when it does review terminations, its decisions represent county policy.[7]  *Hitt*, 301

F.3d at 247-249.

Similar to *Hitt*, an official or formal decision-maker may often be identified

by a rule, e.g., an employee handbook or organizational chart, or in the case of

public entity employers, by examining the statutory authority of the official

alleged to have made the decision.  *Hitt*, 301 F.3d at 247-249.  Here, as in *Hitt*,

County Administrator Roberts had the authority not merely to *recommend* Quinn's

termination but to immediately effectuate her termination.  The Career Service

Council never needed to finalize this decision.  It reviewed Quinn's termination

two years after the fact in a quasi-judicial capacity.  *See id.* at 248-49.

The district court's conflation of the "final policymaker" and

"decisionmaker" inquiries would lead to untenable legal consequences.  Under

such a theory, a city manager could intentionally discriminate by terminating an

employee without fear of liability so long as, at some point, the decision was

reviewed by an unbiased board.  While such a manager should not be able to

---

[7]*See Hitt*, 301 F.3d at 248 ("Under its governing rules, the commission is authorized to review and approve, reverse or modify an adverse employment decision if an employee elects to appeal it.  But the mere authority to review an employment decision is not decisive.  The commission  became involved as an adjudicative tribunal after Hitt chose to appeal his notice of termination.  Its task was to review Constable Connell's decision for conformity with applicable law and regulations, not to initiate Connell's action or generally superintend Connell's employment practices.").

create *municipal* liability when violating official policy, he should not be able to elude *individual* liability for his own unlawful actions. The district court erred by concluding to the contrary.

## C. Collateral Estoppel

We now tread into the bramble bush of collateral estoppel. Defendants argue that Quinn is collaterally estopped from asserting her retaliation claim based on the Monroe County Circuit Court's decision to deny certiorari review of the termination decision. According to the Defendants, the issue underlying the state administrative proceedings—whether there was just cause for Quinn's termination—is identical to the single issue left with respect to Roberts—whether Roberts' actions constituted employment retaliation for Quinn's exercise of her right to free speech.

As a preliminary matter, we note that the district court rejected Defendants' collateral estoppel argument by adopting in full the Report and Recommendation of the magistrate judge on the Defendants' Second Motion for Summary Judgment. However, the parties and the district court have since proceeded as if the collateral estoppel issue was never reached. We sort out this state of affairs by applying our traditional standards of review. The district court's decision (or non-decision) about whether collateral estoppel applies is reviewed *de novo*. *United*

15

*States v. Quintero*, 165 F.3d 831, 834 (11th Cir. 1999). The district court's factual determinations underlying its legal conclusion are upheld unless clearly erroneous. *Id.*

Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *See David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1331 n.10 (11th Cir. 2000). We give preclusive effect to the judgment of a state court provided that two conditions are met: (1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process. *Shields v. BellSouth Adver. & Publ'g Co., Inc.*, 228 F.3d 1284, 1288 (11th Cir. 2000). Similarly, when a state agency acts in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate, we give the agency's fact-finding the same preclusive effect to which it would be entitled in the state courts. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986); *Travers v. Jones*, – F.3d –, 2003 WL 941481, 16 Fla. L. Weekly Fed. C405, C406 (11th Cir. March 11, 2003). The preclusive effect applies even where the agency's fact-finding is not reviewed by a state court. *See Univ. of Tenn. v. Elliott*, 478 U.S. at

16

797-99 (acknowledging the respondent did not seek review of the administrative proceedings in the Tennessee courts). In this case, the Council acted in a judicial capacity and its fact-findings and conclusions were reviewed and affirmed by the state court. Thus, we address whether Quinn's § 1983 claim is barred by collateral estoppel.[8]

Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction. *See Cmty. Bank of Homestead v. Torcise*, 162 F.3d 1084, 1086 (11th Cir. 1998) (citing *Essenson v. Polo Club Assocs.*, 688 So. 2d 981, 983 (Fla. Dist. Ct. App. 1997)); *Stogniew v. McQueen*, 656 So. 2d 917, 920 (Fla. 1995); *Mobil Oil Corp. v. Shevin*, 354 So. 2d 372, 374 (Fla. 1977). The Defendants argue that the Council's fact-findings that Quinn violated certain County rules and that such violations constituted "just cause" for her termination, which were affirmed by the Circuit Court, necessarily preclude Quinn's assertion that Roberts had an improper motive in making his employment decision. Quinn responds that the issue of retaliation for the exercise

---

[8]In § 1983 cases, federal courts considering whether to give preclusive effect to state court judgments must apply that state's law of collateral estoppel. *Wood v. Kesler*, 323 F.3d 872, 879-80 (11th Cir. 2003); *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994); *Vazquez v. Metro. Dade County*, 968 F.2d 1101, 1108 (11th Cir. 1992).

of her free speech right was never examined, and that Roberts presented pretextual reasons for terminating her.[9] The Defendants counter that the "just cause" determination, nonetheless, establishes that Roberts actually had legitimate, non-discriminatory reasons for Quinn's termination and would have made the same employment decision in the absence of her protected speech.[10]

We need not resolve the similarity or dissimilarity of the "just cause" and employment retaliation issues. As the magistrate judge noted, the only party remaining in the suit is Roberts, who is sued in his individual capacity. While Monroe County might arguably raise a collateral estoppel argument, Roberts cannot because he was not a party, or in privity with a party, to the Council proceedings or before the state court,[11] and Florida requires mutuality of parties in

---

[9]In deciding the First Motion for Summary Judgment, the district court found that there was sufficient evidence that Roberts' stated reasons for terminating Quinn were pretext and that his conduct was the result of his unlawful motive. It therefore denied Roberts the protection of qualified immunity. Roberts has not raised the issue of qualified immunity in this appeal.

[10]More specifically, Defendants argue the Council's fact-findings collaterally estop Quinn from proving the fourth prong of her § 1983 retaliation claim. To establish a First Amendment retaliation claim under § 1983, Quinn must show: (1) her speech involves a matter of public concern, (2) her speaking outweighs the government's legitimate interest in efficient public service, (3) the speech played a substantial part in Roberts' challenged employment decision, and (4) Roberts would not have made the same employment decision in the absence of the protected speech. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1565 (11th Cir. 1995); *Bryson v. City of Waycross*, 888 F.2d 1562, 1564 (11th Cir. 1989).

[11]Roberts was not included as a respondent in any capacity in the proceedings before the Council, although he appeared in the caption of the Amended Petition for Writ of Certiorari before the Monroe County Circuit Court. Roberts was not identified as a party under the Amended Petition's section titled "Parties." Because Roberts is not a respondent in the Council

18

order for the doctrine of collateral estoppel to apply. *See Stogniew*, 656 So. 2d at 919. Unless both parties or their privies are bound by the prior judgment, neither may use it in a subsequent action. *Id.* "For one to be in privity with one who is a party to a lawsuit or for one to have been virtually represented by one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party." *Id.* at 920.

In *Gentile v. Bauder*, 718 So. 2d 781 (Fla. 1998), the Florida Supreme Court held that privity does not exist between a police officer sued under § 1983 and the State of Florida, which prosecuted the § 1983 plaintiff in a previous criminal case. At the criminal trial, the police officer's search warrant of the plaintiff's home was found to be inadequate and the evidence seized was suppressed. In a subsequent § 1983 action against the officer, the plaintiff, who was the defendant in the criminal case, sought to collaterally estop the police officer, a non-party to the criminal case, from raising a qualified immunity defense based upon the findings made at the criminal trial. The Florida Supreme Court rejected the state appellate court's application of collateral estoppel:

---

proceedings, his name is not in the caption of the Final Order of the Council, and he was not identified as a party in the Amended Petition before the state court, we conclude he was not a party in any capacity in the Council proceedings or the appeal of the Council's decision before the Circuit Court.

> [P]etitioner [police officer] was not a party to the state criminal action against respondent; nor was petitioner in privity with the State of Florida. To be in privity with one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party. Here, petitioner had no greater interest in the outcome of [the criminal trial] than any other citizen of this state.

*Id.* at 783 (citation to *Stogniew* omitted). Although a § 1983 case, we recognize *Gentile* involved the offensive use of collateral estoppel by a plaintiff against a defendant police officer, who was not a party to the prior criminal case.

In contrast, this case involves "defensive" collateral estoppel. Thus, we must go further and determine whether Defendant Roberts can assert defensive collateral estoppel against Plaintiff Quinn, who was a party to the prior Council proceedings. In several situations, the Florida courts have relaxed the mutuality requirement and approved the use of defensive collateral estoppel by a defendant who was not a party, or in privity with a party, to the prior suit.

In *Zeidwig v. Ward*, 548 So. 2d 209 (Fla. 1989), the Florida Supreme Court modified the mutuality-of-parties requirement of collateral estoppel when collateral estoppel is asserted in a defensive manner and in a criminal-to-civil context. The Florida Supreme Court concluded that a criminal defendant was estopped collaterally from bringing a civil malpractice action against his former defense attorney after a judicial determination in the criminal case that the

20

criminal defendant received effective assistance of counsel. Although the defendant attorney in the subsequent civil malpractice action was not a party, or in privity with a party, in the prior criminal case, the Florida court allowed the defendant attorney to assert defensively collateral estoppel against his former client, who was a party to both the criminal case and to the subsequent civil malpractice action.

In modifying its mutuality-of-parties requirement, the Florida Supreme Court noted that this "modification has long been recognized by the United States Supreme Court." *Zeidwig v. Ward*, 548 So. 2d at 212 (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971)). The Florida Supreme Court noted that the United States Supreme Court had "completely abrogated the mutuality requirement in a defensive context and concluded that a defendant may use collateral estopped defensively to prevent a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Zeidwig v. Ward*, 548 So. at 212 (citing *Blonder-Tongue*, 402 U.S. 313). The Florida Supreme Court acknowledged that the United States Supreme Court "ruled that the defensive use of the doctrine gives a plaintiff strong incentive to join all potential parties in the first action without

compromising fairness and promotes the interests of judicial economy." *Id.*

(quoting *Blonder-Tongue*, 402 U.S. at 328).[12]

In *Zeidwig*, the Florida Supreme Court further noted the public policy justification for the application of collateral estoppel in this type of circumstance. "It would undermine the effective administration of the judicial system to ignore completely a prior decision of a court of competent jurisdiction in this state in the same issue which plaintiff seeks to relitigate in a subsequent action." *Zeidwig,* 548 So. 2d at 214.

The Florida appellate courts have applied another exception to the mutuality-of-parties requirement in cases where a judgment of conviction is based upon a guilty plea, stating "a defendant is estopped from denying his guilt of the subject offense in a subsequent civil action." *Kelly v. Dep't of Health & Rehabilitative Servs.*, 61 So. 2d 1375, 1377 (Fla. Dist. Ct. App. 1992); *Paterno v. Fernandez*, 569 So. 2d 1349, 1350 (Fla. Dist. Ct. App. 1990); *see also Lora v. Dep't of State, Div. of Licensing*, 569 So. 2d 840 (Fla. Dist. Ct. App. 1990). Similarly, in *Brown v. City of Hialeah*, 307 F.3d 1433, 1437 (11th Cir. 1994), this

---

[12]Further, giving preclusive effect to administrative fact-findings and state court judgments not only serves the parties' interest in avoiding the relitigation of issues and the public's interests in conserving judicial resources, but also serves the value of federalism by eliminating the chance that the federal forum reaches a conflicting result from the administrative agency or state court. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966), approved in *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982).

Court affirmed the district court's ruling "that under Florida law, collateral estoppel prevented Brown from introducing and arguing facts inconsistent with his guilty plea." Brown, a defendant in a prior criminal case, filed a § 1983 action against several police officers and the City of Hialeah alleging excessive force during his arrest. Although the parties were different in the two cases, this Court affirmed the district court's determination that collateral estoppel prevented Brown from introducing evidence in his § 1983 civil case contrary to his guilty plea in the prior criminal proceedings. *Id.* at 1437.

In addition to these two exceptions in the criminal-to-civil context, Florida appellate courts have allowed defensive collateral estoppel in a civil-to-civil context involving product liability claims. *West v. Kawasaki Motors Mfg. Corp.*, 595 So. 2d 92, 93 (Fla. Dist. Ct. App. 1992) (citing *Zeidwig v. Ward* and noting: "Florida courts on occasion recognized exceptions to the identity of parties requirement under the res judicata or collateral estoppel doctrines."). In *West*, the Florida appellate court concluded: "[F]airness and policy considerations dictate that in products liability cases an exception should be recognized to the identity of parties requirement under the doctrines of res judicata or collateral estoppel." *Id.* at 95. The *West* plaintiffs had not prevailed in their prior lawsuit against the manufacturer and retailer of the product. In the plaintiffs' subsequent separate

23

action against the wholesale distributor in *West*, the Florida court determined that the plaintiffs' product liability claim was barred against the wholesale distributor, a non-party in the first action, because the two cases involved the same claims and underlying set of facts. Thus, *West* carved out another defensive exception to Florida's mutuality requirement.[13]

Although Florida courts have recognized these three defensive exceptions to the mutuality requirement, they also have continued to adhere strictly to Florida's mutuality requirement as recently as in *J.K.C. v. Katz*, 731 So. 2d 1268, 1270 n.1 (Fla. 1999) (quoting *Stogniew v. McQueen*, 656 So. 2d 917, 919-20 (Fla. 1995) and reaffirming that "we are unwilling to follow the lead of certain other states and of the federal courts in abandoning the requirements of mutuality in the application of collateral estoppel"). In *Katz*, a family court had determined in the mother's custody dispute with the father that the father had not sexually abused their minor child. In the mother's subsequent medical malpractice action against a doctor for failing to diagnose sexual abuse, the Florida Supreme Court adhered to the mutuality requirement and concluded that the doctor could not assert collateral

---

[13]*See also Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1067 (Fla. 2001) (noting that, while "judicial estoppel normally requires mutuality of parties, there are exceptions to this requirement," citing both *West v. Kawasaki Motors Mfg. Corp.*, 595 So. 2d 92, 94 (Fla. Dist. Ct. App. 1992) and *Zeidwig v. Ward*, 548 So. 2d 209 (Fla. 1989) as exceptions in the collateral estoppel arena, and consequently allowing the defensive use of judicial estoppel in *Blumberg*).

estoppel defensively to bar the mother from relitigating the alleged sexual abuse of her minor child. *Id.* at 1270.

In light of this precedent, we face this difficult interpretative question concerning Florida collateral estoppel law: whether the Florida courts would adhere to the mutuality-of-parties requirement <u>or</u> carve out another defensive exception and give preclusive effect to, the Council's fact-findings, affirmed by the Florida Circuit Court, and bar plaintiff Quinn from relitigating those fact issues in her § 1983 civil action against Roberts individually. This is an especially important question here in light of the fact that we already have concluded that Roberts was the "decisionmaker" for purposes of § 1983 and that the Council was only reviewing two years later whether Roberts had properly terminated Quinn's employment.[14]

---

[14]In a recent § 1983 decision, this Court concluded that a § 1983 plaintiff firefighter was precluded from relitigating facts regarding whether his Fire Chief had disciplined him in retaliation for the plaintiff's union activity in violation of plaintiff's First Amendment rights of free speech and freedom of association. The district court concluded issues of fact existed concerning why the § 1983 plaintiff was disciplined. Reversing and applying *Georgia* law, this Court determined that the § 1983 plaintiff had had a full and fair opportunity to litigate the factual issues at the administrative hearing before the County Merit System hearing officer and therefore was barred from relitigating certain factual issues in his § 1983 retaliation claim against his Fire Chief, individually and in his official capacity, and against the Chief Executive Officer of the City, individually and in his official capacity. *Travers v. Jones*, – F.3d –, 2003 WL 941481, 16 Fla. L. Weekly Fed. C405, C406 (11th Cir. March 11, 2003).

Nonetheless, given the Florida Supreme Court's recent unequivocal adherence to the mutuality requirement in the civil-to-civil context in *Katz*, we must follow Florida's general rule requiring mutuality of parties. There is no dispute that Roberts was not a party, or in privity with a party, to the proceedings before the Council and the Circuit Court.[15] Under Florida law, Roberts, as a non-party, was not bound by any factual determinations made during the prior Council and court proceedings. Thus, we conclude that under Florida's mutuality requirement, Roberts equally cannot assert collateral estoppel against Quinn.

## III

We AFFIRM the grant of summary judgment in favor of Monroe County, REVERSE the grant of summary judgment in favor of Defendant Roberts, and REMAND for proceedings consistent with this opinion.

---

[15]Tellingly, the Defendants omit the same parties or privies requirement from Florida law by citing to U.S. District Court cases applying the *federal* collateral estoppel standard. *See, e.g.*, *Magluta v. United States*, 952 F. Supp. 798, 804 (S.D. Fla 1996); *Heller v. Plave*, 743 F. Supp. 1553, 1560 (S.D. Fla. 1990); *City of Gainesville, Fla. v. Island Creek Coal Sales Co.*, 618 F. Supp. 513, (N.D. Fla. 1984). The federal standard for collateral estoppel does not require mutuality of parties. *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). In their brief, Defendants state in a single, conclusory paragraph that privity between Roberts and the County exists, but fail to cite any Florida case law in support of this proposition.