[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11372
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cv-01376-GAP-DCI

TITUS DIXON,
an individual ,

Plaintiff-Appellant,

versus

ROBERT E. HANSELL,
as former Sheriff of Osceola County,

Defendant,

RUSS GIBSON,
as Sheriff of Osceola County,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 8, 2021)

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

The Osceola County, Florida, Sheriff's Office ("OCSO"), terminated Deputy Sheriff Titus Dixon's employment in 2014 after learning that he had been indicted on three felony charges related to tax fraud. Dixon, who was ultimately acquitted of all charges, sued Sheriff Russell Gibson in his official capacity under 42 U.S.C. § 1983, alleging that his termination violated due process and was racially discriminatory. The district court granted summary judgment in favor of Gibson, finding that the sheriff was not the final decisionmaker as to Dixon's termination. Dixon now appeals. After careful review, we affirm.

## I.

We review the district court's grant of summary judgment *de novo*, "considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Mere speculation is insufficient to withstand summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

2

**II.**

The relevant facts, in the light most favorable to Dixon, are as follows. Dixon worked for OCSO as a deputy sheriff for nine years prior to his termination. In that time, his performance reviews were positive and his superiors encouraged him to apply for promotion.

In November 2013, the Internal Revenue Service ("IRS") advised the OCSO that Dixon was under criminal investigation and requested that OCSO provide it with records concerning his use of law-enforcement databases. Dixon became aware of the investigation in December 2013, when two IRS agents questioned him for approximately two hours at the sheriff's office. After that interview, the OCSO notified him that it was opening an internal-affairs investigation regarding the IRS allegations and that he would be placed on paid administrative leave.

In March 2014, OCSO opened a separate internal-affairs investigation after Dixon failed to appear at a court proceeding relating to a traffic citation that he had issued. In May 2014, after that investigation was complete, Dixon received a Notice of Disciplinary Action ("NDA"). The form included a statement acknowledging "the right to appeal the disciplinary action pursuant to Sheriff's Office written directives." Dixon indicated that he wished to appeal the severity of the discipline and signed the NDA.

In September 2014, a federal grand jury returned an indictment charging Dixon with conspiracy to commit wire fraud, theft of government funds, and aggravated identity theft. The indictment alleged that Dixon had misused his position as a law-enforcement officer to further a tax-fraud scheme.

On September 19, 2014, Dixon was ordered to appear at the sheriff's office and was given an internal investigation notification form, which he signed. He was then orally informed that he was being terminated but was not presented with an NDA.[1] Immediately after his termination, he was arrested. Ultimately, a jury acquitted him of all charges.

## III.

In 2018, Dixon filed an amended complaint under 42 U.S.C. § 1983 against Gibson in his official capacity bringing two claims related to his termination. First, he claimed that his termination was racially discriminatory, in violation of 42 U.S.C. § 1981. Second, he claimed that the OCSO deprived him of procedural due process, in violation of the Fourteenth Amendment.

Gibson moved to dismiss Dixon's complaint under Rule 12(b)(6), Fed. R. Civ. P., arguing that he could not be liable in his official capacity for Dixon's injuries because, as a matter of Florida law, the OCSO Sheriff is not the final policymaker

---

[1] The OCSO officials who informed Dixon of his termination testified that he did receive an NDA but refused to sign it. As the district court did, for purposes of summary judgment, we resolve this dispute in favor of Dixon and assume that he did not receive one.

4

for termination decisions. The district court agreed that, under Florida law, a career-service appeals board ("CSAB") has the authority to overrule or modify the sheriff's adverse employment decisions. However, it denied Gibson's motion to dismiss because Dixon could succeed if he could prove his allegations that CSAB review was not meaningful or that the OCSO did not provide him notice of his ability to appeal his termination to the CSAB.

After discovery, Gibson moved for summary judgment, arguing that Dixon had not provided evidence creating a genuine issue of material fact as to either issue identified by the district court in its prior order. Accordingly, he argued, Dixon had failed to prove that the sheriff was a final policymaker regarding his termination.

In support of his motion for summary judgment, Gibson attached, among other evidence, copies of several CSAB decisions in which the reviewing board voted to overrule or modify the sheriff's disciplinary action on appeal.

In response, Dixon argued that he had shown that he was not aware of his appellate rights because the OCSO did not provide him with an NDA when he was terminated. In addition, he argued that he had provided facts sufficient to prove that the CSAB consistently "rubber stamped" the Sheriff's employment decisions. He referred the court to two unsworn declarations provided by Florida police officers who stated that they had served on CSAB panels and had voted to reverse the

terminations in the cases before them, but the other panel members had voted to uphold the terminations.

The district court granted summary judgment in favor of Gibson, concluding that Dixon had not met his burden to show that Gibson was a final policymaker regarding his termination. This appeal followed.

## IV.

A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). However, a government entity cannot be liable under § 1983 under the doctrine of *respondeat superior*. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997). Rather, § 1983 provides a cause of action against a government entity if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

In the employment context, municipal liability may arise under § 1983 when the official who made the termination decision is a "final policymaker." *Scala*, 116 F.3d at 1399. An official does not have final policymaking authority over a particular subject matter when that official's decisions are "subject to meaningful administrative review." *Id.* at 1401. Generally, the existence of a reviewing body with the power to reverse or amend the decision of the employer suffices to find that

6

an official is not a final policymaker. *See id.* at 1402-03; *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997).

A plaintiff may refute an assertion that an official is not a final policymaker by demonstrating that the reviewing body's administrative review is not meaningful. *Scala*, 116 F.3d at 1401. To succeed, the plaintiff must show that the reviewing body has defective procedures, merely "rubber stamps" the official's decision, or ratifies the official's decision and improper motive. *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326 (11th Cir. 2003).

Florida law provides an appeal process for OCSO career-service employees "arising from disciplinary actions brought under the sheriff's rules, procedures, or polices which result in dismissal, suspension, demotion, or reduction in pay." *See* 2000 Fla. Laws, Ch. 2000-388 §§ 1(1), 3(1), 4. Deputy sheriffs are career-service employees. *Id.* § 1(2)(a)(3). The CSAB "shall, by majority vote, dispose of the appeal by making findings of fact and issuing a written decision to the sheriff and the [employee]." *Id.* § 4(3)(a). The CSAB's decision shall either sustain or not sustain the employee's discipline and may modify any disciplinary action that was the subject of the appeal. *See id.* §§ 4(3)(b)-(c).

A publicly available statute may be sufficient to provide notice of a right to a hearing because individuals are presumptively charged with knowledge of such a statute. *Grayden v. Rhodes*, 345 F.3d 1225, 1239 (11th Cir. 2003).

**V.**

On appeal, Dixon argues that the district court erred in granting summary judgment in favor of Gibson because he provided enough evidence to create a material dispute as to whether he had a meaningful opportunity for review of the termination decision. In particular, he argues that he met his burden to show that he was not aware of his opportunity to appeal the termination decision and that, even if he had notice of his ability to appeal, the administrative review would not have been meaningful because the CSAB is merely a "rubber stamp" of OCSO disciplinary decisions. We disagree and conclude that the district court correctly granted summary judgment because Gibson was not a final policymaker regarding Dixon's termination.

First, there was no genuine issue of material fact as to whether Dixon was aware of his right to appeal his termination. Dixon argues that, when it assumed his version of the facts surrounding his termination was the correct version—specifically, that he was not presented with an NDA—the district court also took it as true that he did not receive notice of his appeal rights. But that he did not receive an NDA shows only that he did not receive notice of his appeal rights on the particular day that he was terminated. Dixon does not argue or provide authority showing that an NDA must be given to an OCSO employee before he may appeal

8

an adverse employment action.  And the record demonstrates that he was on notice of his appeal rights before the day of his termination.

In May 2014, four months before his termination, Dixon signed an NDA acknowledging his awareness of his right to appeal disciplinary actions against him. Although that NDA was not related to his instant termination, it demonstrated that Dixon knew of the appeal policy.  Moreover, because the OCSO's appeal process is codified under Florida law, Dixon had statutory notice of the process's existence and of how it operates.  *See Grayden*, 345 F.3d at 1239.

Dixon argues that it was error for the district court to find the law to provide sufficient notice, as "there is no presumption that all of the citizens actually know all of the law all of the time." *Grayden*, 345 F.3d at 1243.  He contends that he did not have time, within the statutory appeal window—part of which he spent being processed after arrest—to familiarize himself with the appeal process.  But Florida law is specific to career-service officers of the OCSO.  *See* 2000 Fla. Laws, Ch. 2000-388 §§ 1(1).  Dixon, who had been a deputy sheriff at OCSO for nine years before his termination, did not need to "achieve[] a state of legal omniscience" to have statutory notice of the appeal procedures.  *See id.*; *see also Atkins v. Parker*, 472 U.S. 115, 130-31 (1985) ("The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny.").

9

Second, Dixon failed to provide sufficient evidence to create a genuine dispute of fact regarding whether the CSAB provided employees with meaningful administrative review or whether it served as a "rubber stamp" to the sheriff's decisions. Dixon presented unsworn declarations of two officers who merely attested to the fact that when they served on a CSAB, their votes to overturn the sheriff's disciplinary decision were outvoted by the majority of the members on the board. Dixon argues that the district court erred by judging the credibility of his witnesses, but the declarations offered no probative evidence at all, regardless of credibility. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). The only inference that can be drawn from these declarations is that officers sitting on a CSAB sometimes get outvoted. The declarations offer only speculation as to the nature of CSAB review in general and do not provide any evidence that the CSAB was defective, rigged, or used to ratify an improper motive. *See Cordoba*, 419 F.3d at 1181; *Quinn*, 330 F.3d at 1326. This is especially true when viewing the declarations in light of the records that Gibson provided showing several instances in which the CSAB had, in fact, overruled the sheriff's disciplinary actions. The district court correctly found that Dixon failed to provide sufficient evidence to create a genuine dispute of fact as to whether the CSAB's administrative review would have been meaningful in his case. *See Quinn*, 330 F.3d at 1326.

10

## VI.

For these reasons, Dixon failed to meet his burden to show that Gibson was the final policymaker regarding his termination and, therefore, failed to show that Gibson could be held liable in his official capacity under § 1983.  Accordingly, we affirm the district court's grant of summary judgment in favor of Gibson.

**AFFIRMED.**