[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11036

_____

ROLAND MCCARTHY,

Plaintiff-Appellant,

*versus*

CITY OF CORDELE, GEORGIA,
JOSHUA DERISO,
In his individual and official capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:22-cv-00072-LAG

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal involves a complaint about racial politics in a small town in rural Georgia. Joshua Deriso campaigned for election as chairman of the City Commission of Cordele, Georgia, by publicly stating his intent to "replace Caucasian employees with African Americans"; to lead "an entirely African American" City Commission; and to replace Roland McCarthy, the white City Manager, with a black City Manager. On social media, Deriso declared, "Structure needs to change . . . More Blacks!!!"; "The new City Manager should be Black"; and "it is time for African Americans to run our city." Deriso won the election. The same day he and fellow commissioners took their oaths of office, the Commission voted on racial lines to fire McCarthy and to replace him with a black City Manager. Without a tie vote, Deriso, as chairman, did not vote. But he encouraged the other black commissioners to fire McCarthy because he is white. Before the vote, Deriso and Royce Reeves, another black commissioner, warned McCarthy that he would be replaced with a black City Manager. And they told him that he could not return to his former position as Finance Director because he "did not look like" them.

The question for us is whether those allegations permit the inference that the City Commission fired McCarthy because he is white. The district court said no and dismissed his complaint. We disagree. We vacate the dismissal of the complaint against the City,

affirm the dismissal against Deriso in his individual capacity, and remand.

## I. BACKGROUND

At this stage, we recount and accept the allegations of McCarthy's complaint as true. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021). The district court dismissed the complaint without requiring an answer to it. We do not know whether the City and Deriso would deny any of the allegations.

The City Commission of Cordele, Georgia, hired Roland McCarthy, a white man, as its Finance Director in 2017. In January 2021, the Commission unanimously promoted McCarthy to City Manager. McCarthy demonstrated "exemplary service and expertise" in these roles.

Seven months into McCarthy's tenure as City Manager, Joshua Deriso announced his campaign for chairman of the City Commission. During that campaign, he "frequently" expressed his goal to see "an entirely African American Commission" and to "replac[e] Caucasian employees with African Americans." He stated in a Facebook post that if elected chairman, he would replace McCarthy with a City Manager "of color; ideally a woman," within 90 days of taking office. He wrote in another post that the "new City Manager should be Black." And in another, he complained that "Cordele's heads of Departments are not diverse at all! Structure needs to change . . . More Blacks!!!" Deriso echoed his racially discriminatory hiring plans during two "Facebook Live" video streams. In the first stream, he again promised "to replace

Caucasian department heads with African Americans." In the second stream, he stated that "it is time for us [African Americans] to run our city" and promised to "take actions" to secure an "all black" City Commission within four years. Deriso was elected Commission chairman in November 2021.

The following month—after Deriso was elected, but before he took the oath of office—the outgoing commissioners voted to renew McCarthy's employment as City Manager for another year. McCarthy's renewed contract provided that, if his employment were terminated during its term, he would "be entitled to all compensation including salary, accrued vacation[,] and sick leave" through December 31, 2022.

The newly elected commissioners—four black and one white—were sworn into office on January 4, 2022. That day, the Commission voted to terminate McCarthy's employment as City Manager and to hire Angela Henderson Redding—a black woman—to replace him. The commissioners voted along racial lines: three black commissioners voted to fire McCarthy and hire Redding, and one white commissioner voted to retain McCarthy for the rest of his contractual term. Deriso did not participate in the vote because, as chairman, he voted only to break ties. But McCarthy alleges that Deriso "orchestrated the decision to terminate [him] due to his race" and "led, directed, and encouraged" the other commissioners to replace McCarthy "with an African American candidate."

Deriso and Commissioner Royce Reeves, one of the black commissioners who voted to fire McCarthy, had warned McCarthy before the vote that "they were replacing him with an African American candidate." McCarthy asked Deriso and Reeves whether he could at least return to his former position as City Finance Director. Deriso and Reeves told McCarthy that "that would not be possible" because he does not "look like them." The City refused to pay McCarthy for the rest of his contractual term.

McCarthy sued the City and Deriso for intentional race discrimination and breach of contract. He alleged that the City and Deriso, in both his official and individual capacities, violated federal laws prohibiting racial discrimination in contracting and by persons acting under color of state law. *See* 42 U.S.C. §§ 1981, 1983. And he alleged that the City violated Title VII of the Civil Rights Act of 1964, which prohibits racial discrimination in employment. *Id.* § 2000e-2(m).

The City and Deriso moved to dismiss McCarthy's complaint for failure to state a claim. They argued that McCarthy failed to state a claim of racial discrimination against the City because he failed to plausibly allege that a "majority" of the five-member Commission harbored racial animus against him when it voted to fire him as City Manager; that McCarthy's claims against Deriso in his official capacity were "impermissibly duplicative" of his claims against the City; and that qualified immunity barred McCarthy's claims against Deriso in his individual capacity.

The district court dismissed McCarthy's complaint. It ruled that McCarthy failed to state plausible claims of racial discrimination against the City because he failed to allege that the "Commission itself" acted with a racially discriminatory motive. Although McCarthy alleged that Deriso "expressed an intent to replace [him] with a person of color," Deriso "did not take part in the vote that resulted in [his] termination." The "only allegation" of racial animus on the part of a voting commissioner was Reeves's statement that McCarthy was being replaced with a black woman and could not return to his former position because he is not black. And a "single allegation" that Reeves acted with a discriminatory motive is not sufficient to allege that "the entire Commission" acted with a discriminatory motive. Because the claims against the City failed, the district court ruled that the claims against Deriso in his official capacity failed too. The district court also dismissed McCarthy's claims against Deriso in his individual capacity because Deriso "was not a participant in the alleged unlawful act—the vote to terminate [McCarthy]'s employment." The district court declined to exercise supplemental jurisdiction over McCarthy's claim for breach of contract.

## II. STANDARDS OF REVIEW

We review *de novo* the dismissal of a complaint for failure to state a claim. *MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1238 (11th Cir. 2023). A complaint states a claim if its factual allegations permit a "reasonable inference" that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We view the allegations of the complaint in the light most favorable to the plaintiff, *Ziyadat*, 3 F.4th at 1295;

accept as true the well-pleaded allegations, *id.*; and draw all reasonable inferences in the plaintiff's favor, *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016). We ignore any "[t]hreadbare recitals of the elements of a cause of action" that the complaint supports with only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that McCarthy alleged plausible claims of racial discrimination against the City. Second, we explain that McCarthy cannot sue Deriso individually.

### A. The District Court Erred by Dismissing McCarthy's Claims of Discrimination Against the City.

McCarthy argues that the district court erred by dismissing his claims of racial discrimination against the City and against Deriso in his official capacity. Because a "claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual," *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009), we treat McCarthy's official-capacity claims against Deriso as claims against the City.

Title VII, section 1981, and section 1983 prohibit a public employer from firing any employee because of his race. These provisions "are not limited to discrimination against members of any particular race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79, 286–87 (1976) (Title VII and section 1981); *see Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018) (section 1983). They "proscribe racial discrimination in . . .

employment against whites on the same terms as racial discrimination against nonwhites." *McDonald*, 427 U.S. at 279–80, 287.

When the employer is a municipality, the employee must allege that the racial discrimination was a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). An "employment decision, such as termination," qualifies as a municipal policy if the "decisionmaker 'possesse[d] final authority to establish municipal policy with respect to the action.'" *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). And when the final policymaker for a challenged employment decision was a multimember body, the plaintiff must allege that "a majority" of the members voted in favor of the decision "for an unconstitutional reason." *Matthews v. Columbia County*, 294 F.3d 1294, 1295 (11th Cir. 2002). When policymaking authority rests with a collegial body "as an entity," allegations that fewer than a "majority" of the members harbored unconstitutional motives are "insufficient to impute an unconstitutional motive" to the entity "as a whole." *Id.* at 1297.

The City argues, and the district court ruled, that McCarthy failed to allege that a majority of the commissioners voted to fire him because of his race. The City does not dispute that McCarthy plausibly alleged that both Deriso and Reeves had racially discriminatory motives. But because Deriso did not vote, the City argues that McCarthy plausibly alleged only that one of the commissioners who voted to fire him was motivated by racial animus. And an

"unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole." *Id.*; *accord Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001).

We disagree with the City. The allegations in McCarthy's complaint, viewed in his favor, permit the reasonable inference that the commissioners who voted to fire him did so because of his race. McCarthy alleged that Deriso "led, directed, and encouraged" his fellow commissioners to fire McCarthy and replace him "with an African American candidate"; that, even before the new commissioners took office, Deriso and Reeves had garnered enough support for their discriminatory plan to tell McCarthy that he was being replaced with a black woman; that, immediately upon entering office, a majority of the commissioners voted to fire McCarthy, even though he was an exemplary employee and the former Commission had renewed his contract one month earlier; that the Commission hired a black woman to replace McCarthy, as Deriso and Reeves had promised; and that all the commissioners who voted to fire McCarthy were black, *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (plaintiff stated a plausible national-origin discrimination claim by alleging, among other facts, the "nationalities of at least some of the relevant persons involved with his termination"). Taken together, these allegations "nudge[]" McCarthy's race-discrimination claims "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680 (citation and internal quotation marks omitted).

McCarthy plausibly alleged that the Commission discriminated against him because he is white, and the district court erred by dismissing his claims of racial discrimination against the City. Federal law is no more tolerant of discrimination against whites than it is discrimination against members of any other race. "Eliminating racial discrimination means eliminating all of it." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2161 (2023). We vacate the order insofar as it dismissed McCarthy's claims against the City and declined to exercise supplemental jurisdiction over his claim of breach of contract.

### B. The District Court Correctly Dismissed McCarthy's Claims Against Deriso Individually.

McCarthy argues that the district court also erred by dismissing his claims of discrimination against Deriso individually. *See* 42 U.S.C. §§ 1981, 1983. He argues that Deriso is individually liable because, by encouraging the other commissioners to vote against McCarthy because of his race, Deriso caused the Commission to fire him. We disagree.

Only a person who has "the power to make official decisions" can be individually liable for racial discrimination under section 1983. *Quinn*, 330 F.3d at 1326. The Commission, not Deriso individually, fired McCarthy. Deriso cannot be held individually liable for that decision under section 1983. *See id.* at 1326, 1328 (holding that an "official decisionmaker" may be held individually liable if he had the authority "not merely to *recommend* [the employee]'s termination" but to "effectuate" it). And because "a section 1981

23-11036               Opinion of the Court                    11

claim . . . merge[s] into [a] section 1983 claim for racial discrimina-tion," *Busby v. City of Orlando*, 931 F.2d 764, 771–72 n.6 (11th Cir. 1991), McCarthy's section 1981 claim against Deriso individually falls with his section 1983 claim. We affirm the dismissal of McCar-thy's claims against Deriso individually.

## IV. CONCLUSION

We **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings.