[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14057
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cv-00327-PGB-GJK


MARCOS R. LOPEZ,

Plaintiff-Appellant,

versus

RUSSELL GIBSON,
in his official capacity as Sheriff of Osceola County, Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 14, 2019)

Before TJOFLAT, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Marcos R. Lopez, a deputy employed by the Sheriff's Office of Osceola County, Florida, appeals the district court's grant of summary judgment to Defendant Sheriff Russell Gibson in his official capacity on Lopez's 42 U.S.C. § 1983 claim that Sheriff Gibson demoted him in retaliation for Lopez's exercising his First Amendment rights.  After review, we affirm because: (1) Lopez's suit against Sheriff Gibson in his official capacity as Sheriff of Osceola County is a suit against Osceola County itself; (2) Sheriff Gibson in his official capacity was not the final policymaker as to Lopez's demotion; and (3) Osceola County itself cannot be liable under a theory of respondeat superior.

## I.  FACTUAL BACKGROUND

Plaintiff Lopez is a deputy with the Sheriff's Office of Osceola County ("Sheriff's Office").  In early 2016, Plaintiff Lopez was promoted to the rank of sergeant, but he was later demoted to deputy status due to his several conduct violations.  Plaintiff Lopez alleges that his demotion was unlawful retaliation for his protected First Amendment speech on Facebook during Lopez's 2016 campaign for Sheriff of Osceola County.  The only defendant here is the current Sheriff, Russell Gibson, in his official capacity.

The district court granted summary judgment in favor of the defendant Sheriff Gibson.  The district court concluded that Sheriff Gibson in his official capacity was not a final policymaker with respect to Plaintiff Lopez's demotion

2

because the Career Service Appeals Board's review of Lopez's intended discipline was meaningful, and its determination was the final decision as to Lopez's demotion.

We first recount the events leading to Plaintiff Lopez's demotion and then the decision by the Career Service Appeals Board before the demotion took place. The parties generally agree as to these facts.

## A.   Lopez's Employment Under Sheriff Hansell

In 2003, Plaintiff Lopez was hired as a communications dispatcher by the Sheriff's Office.  After attending the law enforcement academy and obtaining his law enforcement certification, Lopez became a deputy in 2005.  Lopez was assigned to road patrol until 2009, when he applied for and was selected for the community response team.

After a few years on the community response team, Plaintiff Lopez applied to be promoted to the rank of sergeant, which involves a written examination and an oral review board.  After failing the written examinations in 2012 and 2014, Lopez passed in 2016 and went before the oral review board.  Lopez was placed on the promotional list and was promoted to the rank of sergeant effective June 6, 2016.

Throughout 2016, the Sheriff of Osceola County was Robert Hansell, who notified Lopez of his promotion.  Sheriff Hansell served as Sheriff of Osceola

3

County from January 2005 through January 2, 2017.  Hansell did not run for reelection in 2016, and his term expired on January 2, 2017.  Most of the events took place during Sheriff Hansell's tenure.

In November 2016, Defendant Gibson was elected as the Sheriff of Osceola County, and he took office on January 3, 2017.  After Sheriff Gibson took office, the only relevant event was Plaintiff Lopez's final appeal to the Career Service Appeals Board in January and February 2017.

**B.      Lopez's 2016 Campaign for Sheriff of Osceola County**

Two days after being promoted to the rank of sergeant on June 6, 2016, Plaintiff Lopez announced his campaign to become the next Sheriff of Osceola County.  Lopez registered with the Supervisor of Elections of Osceola County, ran as a non-party affiliated candidate, and did not have to participate in the primary election.  After the primary election, Lopez's two opponents were Dave Sklarek and Defendant Gibson.  During the general election in November 2016, both Sklarek and Gibson already had retired from the Sheriff's Office and were no longer employees of the Sheriff's Office.

**C.      Lopez's Facebook Activity and the First 2016 Investigation**

On June 8, 2016, Plaintiff Lopez announced his candidacy for Sheriff on Facebook.  During the relevant time period, Plaintiff Lopez maintained two Facebook accounts: a "community cop" page and a personal page.  Lopez

announced his candidacy on his "community cop" page and then used that page as a campaign page. Throughout the opinion, we refer to Lopez's Facebook page at issue as his "community cop" page.

Lopez's campaign platform emphasized the need for change at the Sheriff's Office to reflect the diverse community that it served. In response to Lopez's announcement, two employees of the Sheriff's Office—Sergeant John Pearce and Detective Albert Vazquez—posted negative comments about his candidacy on Lopez's "community cop" page on Facebook.

On June 17, 2016, Plaintiff Lopez responded by filing an internal complaint with Sheriff Hansell's office about Sergeant Pearce's and Detective Vazquez's inappropriate social media posts. After receiving Lopez's internal complaint, Captain Keith Parsons made an initial inquiry and determined that an internal affairs investigation should be conducted.

Lieutenant Ryan Berry performed the internal affairs investigation. Lieutenant Berry found that Plaintiff Lopez himself had also participated in the negative exchange with his fellow law enforcement officers. Lieutenant Berry informed Lopez that the internal investigation now included a review of Lopez's own Facebook posts.

On September 23, 2016, Lieutenant Berry completed the investigation and submitted his report. The investigative report concluded that both Plaintiff

5

Lopez's and Sergeant Pearce's Facebook posts had violated the Sheriff's Office's Standard of Conduct § 341.0(4)(A)(41) regarding courtesy and respect to agency members. Standard of Conduct § 341.0(4)(A)(41) provides that "[m]embers will be courteous and respectful to all agency members, and members of the public." The investigative report's findings were based upon the following Facebook posts:

> Pearce to Lopez: "You have got to be kidding me! Marcos you struggle as a deputy and you expect to fill the shoes of the Sheriff!"

> Pearce to Lopez: "After 14 [years] you just barely became a Sergeant but you think you can become Sheriff."

> Lopez to Pearce: "You are a Sergeant and a supervisor shame on you for being ignorant. What have I ever done to you but give you respect?"

> Lopez to Pearce: "I just received the first ignorant comment from a Sergeant [P]earce at the . . . Sheriff's Office."

As a result of their violations, both Plaintiff Lopez and Sergeant Pearce received written reprimands.

**D.    Lopez's Facebook Activity and the Second 2016 Investigation**

Meanwhile, in August 2016, Sheriff Hansell issued a directive to all the Sheriff's Office's employees, prohibiting them from campaigning in uniform or from using the Sheriff's Office's property in pictures or on social media for political purposes.

Also, during August 2016, Sheriff Hansell and other employees were informed that Plaintiff Lopez publicly criticized the Sheriff's Office in a series of

6

posts on his "community cop" page on Facebook.  On August 12, 2016, Sheriff

Hansell initiated a new internal affairs investigation into Plaintiff Lopez's

Facebook posts led by Sergeant Steve Moser.  As part of the investigation,

Sergeant Moser interviewed Lopez and Lieutenant David Boisclair (Lopez's

supervisor) and reviewed Lopez's Facebook posts.  Lopez's Facebook posts that

were reviewed included the following:

> June 11, 2016: "Greetings to my people, my name is Marco Lopez and [I] present my candidacy to be the new sheriff of the county of Osceola Kissimmee . . . My mission is to diversify the department . . . This way to regain the confidence of our residents of the Osceola County . . . ."
>
> August 1, 2016: "Why in the past 12 years under candidate Dave Sklarek leadership was there never created a CITIZEN'S ADVISORY BOARD for Use of Force complaints?  Simply out of touch with the WHOLE community!  Orange County Sheriff Office has one.  Orlando Police Department has one.  Seminole County Sheriff Office has one.  #change #riggedsystem"
>
> August 6, 2016: "To rebuild the trust between law enforcement and the community in BVL, Poinciana and other DIVERSE community in the county.  We must create a SHERIFF'S CITIZEN ADVISORY BOARD #change #diversitytrumpssklarek"
>
> August 8, 2016: "I've been contacted by minority business owners about a candidate visiting their establishment[s] with uniformed folks using bullying tactics to pressure them to put signs on their businesses, buses etc.  Team Sklarek, big brother is watching.  Govern yourself accordingly."
>
> August 10, 2016: post included photographs of Sheriff Hansell's administration referencing them as "Dave Sklarek's Osceola County Sheriff's Administration," when the individuals pictured in the post did not work for Sklarek.  Lopez indicated that the administration was "out of touch with their community.  #change #rigged system"

7

August 12, 2016: "Good Morning Friends, On November 8th we as residents of Osceola County must make a decision on the future of our community.  Do we continue with the 'status quo' Good Ole Boy Network law enforcement agency that will eventually lead us to a Ferguson and[/]or a Baltimore or we move to a new horizon with a DIVERSE law enforcement agency.  #change #riggedsystem"

August 26, 2016: "On day 1 of a Marco Lopez administration at the . . . Sheriff's Office, I will implement mandatory Cultural Diversity training for every single sworn deputy employed by the county.  It will help us unify as one community.  Under the current administration[,] it can cost millions in liability to ALL residents of the county . . . ."

August 28, 2016: Photo of Lopez in uniform sitting in his patrol car that was posted on his "community cop" Facebook page.

Multiple: Lopez referred to the Sheriff's Office as a "#riggedsystem"

Sergeant Moser's investigative report found that (1) Plaintiff Lopez posted numerous posts on his "community cop" Facebook page criticizing the Sheriff's Office and implying that the Osceola County community did not trust the Sheriff's Office, and (2) Lopez disobeyed Sheriff Hansell's directive prohibiting Lopez from wearing his uniform in campaign-related social media posts.  During his interview with Sergeant Moser, Plaintiff Lopez admitted that the picture he posted of himself in uniform was posted after he received direction from Lieutenant Boisclair to refrain from campaigning in uniform or from using the Sheriff's Office's property in pictures or on social media for political purposes.  According to Sergeant Moser,

8

Lopez also acknowledged that he violated Sheriff Hansell's order by posting a photo of himself in uniform on his "community cop" page.[1]

In total, Sergeant Moser's investigative report concluded that Plaintiff Lopez violated three Standards of Conduct of the Sheriff's Office.  First, Lopez violated Standard of Conduct § 341.0(4)(A)(34) regarding criticism.  Standard of Conduct § 341.0(4)(A)(34) provides that "[m]embers shall not publicly criticize or ridicule the Sheriff's Office, its policies, or other members by speech, writing, or other expression, where such speech, writing or other expression is defamatory, obscene, unlawful, undermines the effectiveness of the Sheriff's Office, interferes with the maintenance of discipline, or is made with reckless disregard for truth or falsity."  The investigative report determined that Lopez openly criticized in writing (and through speech) the Sheriff's Office, Sheriff Hansell and his administration, the promotional process, the community relationship between the citizens of Osceola County and the Sheriff's Office, the citizens' trust in their community, and the diversity of the Sheriff's Office.  The investigative report concluded that Lopez's open criticisms undermined the effectiveness of the Sheriff's Office and were made with reckless disregard for truth or falsity.

---

[1] In his deposition, Plaintiff Lopez denied that he admitted to Sergeant Moser that he violated Sheriff Hansell's order because the photo of himself in uniform was originally posted to his personal Facebook page and then later posted on his "community cop" page.  Lopez stated that he had removed the photo of himself in uniform from his "community cop" page.

9

Second, Plaintiff Lopez violated Standard of Conduct § 341.0(4)(A)(6) regarding the violation of rules. Standard of Conduct § 341.0(4)(A)(6) states that "[m]embers will obey the policies, procedures, instructions, orders, and directives of the Sheriff." The investigative report found that, although Lopez admitted that he violated the Sheriff's order for his photo that was taken in his uniform, the picture remained on his "community cop" page.

Third, Plaintiff Lopez violated Standard of Conduct § 341.0(4)(A)(7) regarding unbecoming conduct. Standard of Conduct § 341.0(4)(A)(7) provides that "[m]embers shall conduct themselves at all times, both on and off duty, in such manner as to reflect most favorably on the Sheriff's Office. [Unbecoming conduct] shall include that which brings the Sheriff's Office into disrepute or reflects discredit upon the members of the Sheriff's Office, or that which impairs the operation or efficiency of the Sheriff's Office or members." The investigative report determined that Lopez was the only Sheriff's Office supervisor to violate Sheriff Hansell's direct order regarding social media during the political season. The investigative report concluded that Lopez's actions interfered with the maintenance of discipline and impaired the Sheriff's Office's efficiency.

On November 28, 2016, Plaintiff Lopez received a notice of disciplinary action from Sheriff Hansell's administration stating that the intended discipline was a demotion to the rank of deputy and a 40-hour suspension without pay. The

10

notice expressly provided Lopez the right to accept or appeal the disciplinary action.

**E.      Lopez's 2016 Appeal to the Disciplinary Appeals Board**

Upon being informed of Sheriff's Hansell's intended discipline, Plaintiff Lopez voluntarily requested an appeal through the Disciplinary Appeals Board ("Disciplinary Board") to appeal both the findings and severity of his discipline. The Disciplinary Board consists of three members appointed by the Sheriff, who was still Sheriff Hansell at this time. See 2000 Fla. Laws Ch. 2000-388 § 2(3)(a). The members typically were the rank of lieutenant or above. The three officials selected in Lopez's appeal were Lieutenant Lori Mingione, Captain Fred McCrimon, and Dave Synder. The Disciplinary Board held a hearing and Lopez was present to plead his case. See id. Following the hearing, the Disciplinary Board upheld both Lopez's demotion and 40-hour suspension without pay.

**F.      Lopez's Appeal to the Career Service Appeals Board**

On December 28, 2016, Plaintiff Lopez requested an appeal of his discipline to the Career Service Appeals Board ("Appeals Board"), which is created by Florida law for the Sheriff's Office of Osceola County. See 2000 Fla. Laws Ch. 2000-388 §§ 3(1), 4(1). Under Florida law, the creation and procedures of the Appeals Board are part of the Civil Service Act that applies to the Sheriff's Office of Osceola County. See id. §§ 1(1), 3, 4. The Florida law provides that the

11

Appeals Board "shall be appointed . . . for the purposes of hearing appeals of Career Services members [the rank of lieutenant or below] arising from disciplinary actions brought under the [S]heriff's rules, procedures, or policies which result in dismissal, suspension, demotion, or reduction in pay." See id. §§ 1(1)(a), 3(1). In effect, the Appeals Board affords the Sheriff's Office's employees, the rank of lieutenant or below, a formal right to appeal disciplinary actions by the Sheriff of Osceola County. See id.

After a Sheriff's Office employee requests an appeal, the Appeals Board holds a hearing to resolve the employee's appeal. See id. § 4(1). During the hearing, the employee has the right to be heard publicly, to be represented by an individual of his choice, other than an elected or appointed official of Osceola County or an attorney licensed to practice law in Florida, and to present any evidentiary facts in the employee's behalf presented during the Sheriff's Office's investigation. See id. § 4(2)(a). The Appeals Board has "the power to administer oaths, issue subpoenas, compel the attendance of witnesses, and require the production of books, records, accounts, papers, documents, and testimony." See id. § 4(2)(c).

The Appeals Board "shall, by majority vote, dispose of the appeal by making findings of fact and issuing a written decision to the [S]heriff and the [employee]." See id. § 4(3)(a). The Appeals Board's decision shall either sustain

12

or not sustain the employee's discipline and may modify any disciplinary action which was the subject of the appeal. See id. §§ 4(3)(b)-(c). The Florida law requires that the Appeals Board's decision "shall be final and binding on the [employee] and the [S]heriff." See id. § 4(3)(e).

The Florida law further provides that the Appeals Board shall consist of five members—two members selected by the Sheriff, two members selected by the employee appealing the discipline, and those four individuals select the fifth member, who is the chairperson of the Appeals Board. See id. § 3(2)(a)-(c). To be appointed, the Appeals Board members must be full-time law enforcement officers from an agency within Osceola County. See id.

For the Appeals Board, as to his discipline, Plaintiff Lopez chose Regis McCue and Bert McCue. By the time of Plaintiff Lopez's selection, Sheriff Gibson had now taken office on January 3, 2017. Sheriff Gibson selected Jeff Curtis and Alex Guevara. At a public hearing held on January 13, 2017, the four members met, looked through a list of possible applicants, and unanimously selected Will Englert as the fifth member and chairperson of the Appeals Board. All five members selected were employees of the Sheriff's Office.

Prior to his hearing, Plaintiff Lopez supplied the Appeals Board with a reply to the Sheriff's Office's disciplinary action in which he advocated for his position

and raised First Amendment arguments.  Lopez's counsel wrote the reply with Lopez's assistance.

The Appeals Board members held additional public hearings on January 20, 2017, and January 25, 2017, to discuss whether the Appeals Board wished to issue subpoenas, compel attendance of witnesses, or require the production of books, records, accounts, papers, documents, and testimony.

On February 2, 2017, the Appeals Board members held the final public hearing.  First, the Appeals Board allowed Sergeant Moser to testify for a maximum of 20 minutes.  Sergeant Moser's testimony outlined the facts of the second internal affairs investigation back in 2016.

Next, the Appeals Board allowed Plaintiff Lopez to testify for a maximum of 20 minutes.  Lopez explained that he believed that Sheriff Hansell's administration had begun the internal affairs investigation in retaliation for his campaign platform and exercise of his First Amendment rights.  Lopez also testified that he had allowed his campaign manager and Facebook campaign page administrator, Ruben DeJesus, to post on his Facebook page, and Lopez claimed that he therefore was not responsible for the posts that violated the Sheriff's Office's policies and the Sheriff's orders.  According to Lopez, the majority of the posts were made by DeJesus.  During his campaign, Lopez gave several individuals involved in his campaign the ability to post on his behalf as an administrator to his "community

14

cop" page. However, Lopez admitted that once he gave these individuals the ability to post on Facebook on his behalf, any posts from them that were placed on Lopez's page would appear to be coming from Lopez himself.

The Appeals Board then called Lieutenant Boisclair, Sergeant Daryl Cunningham, and DeJesus to testify. Lieutenant Boisclair testified that he had advised Lopez of Sheriff Hansell's direct order prohibiting any member of the Sheriff's Office to engage in any form of politicking while on duty, in uniform, or with any agency-owned equipment. Sergeant Cunningham testified that he had numerous conversations on Facebook, which he believed were with Lopez, and he had no reason to believe the posts were made by DeJesus. DeJesus testified that he was responsible for about 95% of the posts made on Lopez's Facebook "community cop" page. All of the witnesses were placed under oath before providing testimony to the Appeals Board. All of the Appeals Board members asked the witnesses questions.

Sergeant Moser and Plaintiff Lopez then each had two minutes for final arguments. Lopez asked the Appeals Board to believe that he had no knowledge of and did not monitor the Facebook posts on his "community cop" page. Lopez did not provide any other evidence showing who posted which posts on his Facebook "community cop" page.

15

Following the testimony, the Appeals Board held an open deliberation and then voted whether to sustain each of Plaintiff Lopez's violations of the Sheriff's Office's Standards of Conduct. By a majority vote, 3 of the 5 members voted to sustain each of Lopez's three violations. In its written decision, the Appeals Board made detailed findings of fact as to each of Lopez's violations. First, as to Lopez's violation of Standard of Conduct § 341.0(4)(A)(34) regarding criticism, the Appeals Board found that Lopez maintained a public Facebook page for campaign purposes. Based on the information in the internal affairs investigation and the testimony in its hearing, the Appeals Board found that Lopez knowingly allowed the posting of items which criticized the Sheriff's Office, its practices, and other employees. The Facebook posts, in part, defamed members of the chain of command and administration, undermined the Sheriff's Office's effectiveness, and interfered with the Sheriff's Office's confidentiality, esprit de corps, and efficient operation. The Appeals Board also found that the Facebook posts were made with reckless disregard for truth or falsity.

Second, as to Plaintiff Lopez's violation of Standard of Conduct § 341.0(4)(A)(6) regarding violation of rules, the Appeals Board based its findings on the information, interviews, and documents contained in the internal affairs investigation, as well as the testimony provided during the final hearing held on February 2, 2017. The Appeals Board found that the evidence showed that a

16

photograph of Lopez in his Sheriff's Office uniform was posted on his Facebook "community cop" page after he received a direct order from Sheriff Hansell to refrain from campaigning in uniform or from using Sheriff's Office property in pictures or on social media for political purposes.

Third, as to Plaintiff Lopez's violation of Standard of Conduct § 341.0(4)(A)(7) regarding unbecoming conduct, the Appeals Board found that Lopez allowed public posts on his Facebook "community cop" page. The Appeals Board stated that Lopez's action or inaction in allowing posts on his political and public Facebook page directly contradicted a direct order and violated Sheriff's Office policy with their content. The Appeals Board found that this conduct was unbecoming of a Sheriff's Office supervisor[2] and sent a clear message to subordinates that supervisors were disobeying policies, rules, and direct orders. The Appeals Board stated that there was a heightened need for order, loyalty, morale, and harmony among officers employed by the Sheriff's Office.

Although the Appeals Board sustained Plaintiff Lopez's conduct violations, the Appeals Board, by a majority vote, did not sustain all of the Sheriff's intended discipline. Instead, a majority of the Appeals Board voted to uphold Lopez's

---

[2] It is undisputed that Plaintiff Lopez, with the rank of sergeant, was a supervisor.

17

demotion but to overturn the 40-hour suspension without pay.[3]  The Appeals

Board's February 2, 2017, decision was final and binding on Lopez and Sheriff

Gibson, who had taken office on January 3, 2017.  See 2000 Fla. Laws,

Ch. 2000-388 § 4(3)(e).

In accordance with the Appeals Board's decision, on February 3, 2017,

Sheriff Gibson demoted Plaintiff Lopez from the rank of sergeant to deputy.

Plaintiff Lopez's demotion became effective on February 3, 2017.  Lopez

continues to be employed by the Sheriff's Office as a deputy in road patrol.

## G.    42 U.S.C. § 1983 Lawsuit

On February 24, 2017, Plaintiff Lopez instituted this federal action against

Sheriff Gibson in his official capacity under 42 U.S.C. § 1983 for violating his

First Amendment rights.  Lopez claimed that he was demoted from sergeant to

deputy because of his political speech expressed on his Facebook "community

cop" page during his 2016 campaign for Sheriff.  Lopez alleged that the Sheriff's

Office's discipline and demotion, ultimately imposed by Defendant Sheriff Gibson

in 2017, violated the First Amendment and that he was entitled to § 1983 damages

caused by the unlawful demotion and to reinstatement to the rank of sergeant,

among other things.

---

[3]The two Appeals Board members that Plaintiff Lopez selected voted against Lopez's demotion and suspension.  The fifth member was in favor of demotion but not suspension.  The two members chosen by Sheriff Gibson were in favor of demotion and suspension.

18

Sheriff Gibson in his official capacity filed a motion for summary judgment, which the district court granted.[4]  The district court concluded that Sheriff Gibson in his official capacity was not a final policymaker with respect to Plaintiff Lopez's demotion because the Appeals Board's review was meaningful and its decision was the final one.  Further, the district court ruled that Lopez failed to show that the Appeals Board had defective procedures, rubber-stamped the Sheriff's decision, or merely ratified the Sheriff's decision and improper motive.

Plaintiff Lopez appealed.[5]

## II.  DISCUSSION

Plaintiff Lopez pursues his § 1983 claim for violation of his First Amendment rights against Sheriff Gibson in his official capacity as Sheriff of Osceola County, Florida.[6]  A suit against a municipal officer in his official

---

[4]Plaintiff Lopez also filed a motion for summary judgment, which the district court denied.  In his brief on appeal, Lopez does not appeal the denial of his motion for summary judgment.  Rather, Lopez requests that this Court reverse the district court's grant of summary judgment in favor of Defendant Sheriff Gibson and order a trial on the merits of his First Amendment retaliation claim.

[5]In addition to a First Amendment retaliation claim, Plaintiff Lopez's complaint also asserted an Equal Protection claim under § 1983.  In Lopez's response in opposition to Sheriff Gibson's motion for summary judgment, Lopez indicated that he agreed that his Equal Protection Claim could be dismissed.  The district court granted summary judgment as to the Equal Protection claim.  On appeal, Lopez raises no issue as to any claim except his First Amendment retaliation claim.

[6]We review de novo a district court's summary judgment ruling, applying the same legal standards as the district court.  Carter v. City of Melbourne, 731 F.3d 1161, 1166 (11th Cir. 2013).  Summary judgment is appropriate when, viewing the evidence in the light most favorable

19

capacity is effectively a suit against the government entity that the officer represents. Cook ex. rel Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1115 (11th Cir. 2005). Thus, Plaintiff Lopez's suit is against Osceola County itself. Lopez's suit therefore attempts to hold Osceola County liable for Sheriff Gibson's action in demoting Plaintiff Lopez. A municipality, such as Osceola County, cannot be liable under § 1983 on a theory of respondeat superior. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).

A plaintiff suing a municipality can recover under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." Id.; see Cook, 402 F.3d at 1116 (stating that § 1983 liability exists only when the constitutional violation was the result of an official municipal policy). "Municipal liability under 42 U.S.C. § 1983 may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." Morro v. City of Birmingham, 117 F.3d 508, 510 (11th Cir. 1997); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986); Scala v. City of Winter Park, 116 F.3d

---

to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); Carter, 731 F.3d at 1166.

20

1396, 1397 (11th Cir. 1997). "[W]hether a particular official has 'final policymaking authority' is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988) (emphasis in original). Therefore, in order for Lopez to prevail on his § 1983 claim, Sheriff Gibson must have been the final policymaker with regard to Lopez's demotion.

An official is not a final policymaker where his decisions are subject to "meaningful administrative review." Scala, 116 F.3d at 1401. Generally, the existence of a reviewing body suffices to find that an official whose decisions are subject to review was not a final policymaker. See, e.g., Morro, 117 F.3d at 514 (collecting cases). This Court has found meaningful administrative review where there was review by a Career Service Council with the authority to order reinstatement or otherwise amend, alter, sustain, or reverse the decision of the employer. See Quinn v. Monroe Cty., 330 F.3d 1320, 1322-24, 1326 (11th Cir. 2003) (concluding that county administrator was not the final policymaker with respect to county library director's termination, as required to hold county liable for library director's First Amendment retaliation claim under § 1983, because the county administrator's termination decision was subject to meaningful administrative review by the Career Service Council). Also, this Court has found meaningful administrative review where there was review by a Civil Service Board with power to reverse an employer's termination decision. See Scala, 116 F.3d at

21

1397-98, 1402-03 (holding that city manager and public safety director's decision to terminate fire department employee was subject to meaningful administrative review by the Civil Service Board and thus they were not final policymakers, as required for city to be liable under § 1983 for employee's claim that his termination was in violation of his First Amendment rights to free speech and free association).

However, a plaintiff can attempt to demonstrate that the reviewing body's administrative review is not meaningful, such that the official should be considered the final policymaker. See Quinn, 330 F.3d at 1326; Scala, 116 F.3d at 1402. To succeed in such an argument, the plaintiff needs to show that the reviewing body has defective procedures, merely "rubber stamps" the official's decision, or ratifies the official's decision and improper motive. See Quinn, 330 F.3d at 1326; Scala, 116 F.3d at 1402.

It is the plaintiff's burden to show that the official is a final policymaker. See Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 636-37 (11th Cir. 1991). If the defendant is not a final policymaker, the plaintiff's § 1983 claim fails against a defendant in his official capacity. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986) (noting that summary judgment is proper when a plaintiff fails to adequately prove an essential element of his claim). The dispositive issue in this appeal is whether Sheriff Gibson is a final policymaker

22

with respect to employment demotions of employees working for the Osceola County Sheriff's Office.

## A.    Final Policymaker

On appeal, Plaintiff Lopez argues that in 2017 Sheriff Gibson in his official capacity was the final policymaker because he had absolute authority over Lopez's demotion. Lopez contends that Sheriff Gibson has absolute authority over the deputies and the interpretation and application of the Sheriff's Office's policies. He argues that the Appeals Board did not establish any government policy or determine the constitutionality of Sheriff Gibson's interpretation of the conduct policies.

Plaintiff Lopez acknowledges that the Sheriff's Office's Standards of Conduct prohibit publicly criticizing the Sheriff's Office, where such speech is defamatory, obscene, unlawful, undermines the effectiveness of the Sheriff's Office, interferes with the maintenance of discipline, or is made with reckless disregard for truth or falsity. Lopez does not challenge the constitutionality of the conduct standards vel non. Rather, Lopez contends that Sheriff Gibson should not have applied the existing standards to his conduct and demoted him because it was protected political speech. We need not address whether Lopez's posts on his "community cop" page on Facebook were protected speech or not because Sheriff Gibson was not the final policymaker in regards to Lopez's demotion in any event.

23

As the district court concluded, Sheriff Gibson was not the final policymaker with respect to Lopez's demotion because Florida law specifically delegated that authority to the Career Service Appeals Board. See 2000 Fla. Laws, Ch. 2000-388 § 4(3)(e). Plaintiff Lopez elected to pursue his right to appeal through the discipline appeal process provided by the Appeals Board. See id. § 4(1). As recounted above, the Appeals Board had the power to review and reverse the Sheriff's discipline, and the Sheriff was bound by the Appeals Board's decision. See id. §§ 4(3)(b)-(c), (e). Further, Sheriff Gibson's demotion of Lopez was subject to meaningful administrative review by the Appeals Board, which heard witnesses, deliberated, and issued its own fact findings and decision. See Quinn, 330 F.3d at 1326; Scala, 116 F.3d at 1402-03. The district court thus did not err in concluding that Sheriff Gibson in his official capacity was not the final policymaker as to Lopez's demotion.

## B.    Shared Policymaking Authority

Alternatively, Plaintiff Lopez argues that, even if Sheriff Gibson in his official capacity was not the final policymaker, Sheriff Gibson shared policymaking responsibility with the Appeals Board. Lopez contends that Sheriff Gibson could have rescinded his demotion due to Sheriff Gibson's extensive control and authority in other areas of the Sheriff's Office. Further, Lopez

24

contends that Sheriff Gibson could have rescinded his demotion to admit "that [the] demotion was unconstitutional and restor[ed] [Lopez] to his former position."

As an initial point, Plaintiff Lopez's complaint lacks a separate cause of action for Sheriff Gibson's failure to re-promote Lopez after the Appeals Board's decision. Also, as explained above, Florida law is clear that the Appeals Board's decision is final and binding on both Sheriff Gibson and Lopez. See 2000 Fla. Laws, Ch. 2000-388 § 4(3)(e). Sheriff Gibson did not have the authority to rescind Lopez's demotion after the Appeals Board issued its written decision affirming Lopez's demotion and overturning his 40-hour suspension without pay. See id.

As to Plaintiff Lopez's argument regarding Sheriff Gibson's general authority over the Sheriff's Office, final policymaking authority in one sphere of decision making does not automatically establish final policymaking authority in another. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481, 106 S. Ct. at 1299. Neither Sheriff Gibson's general authority over other aspects of the Sheriff's Office's operations nor his authority to promote is relevant to whether he had final policymaking authority with respect to the specific disciplinary action at issue in this case—Lopez's demotion.

25

## C.    Appeals Board's Procedures and Review

Plaintiff Lopez also contends that Sheriff Gibson was a final policymaker because the Appeals Board's procedures were defective and did not provide him with meaningful administrative review.  Lopez argues he was not provided with meaningful administrative review because: (1) he was not allowed to be represented by an attorney licensed to practice law in Florida; (2) he was not afforded a full evidentiary hearing, as direct and cross-examination of witnesses was limited to 20 minutes each; (3) he was prohibited from presenting evidence or calling witnesses that the Sheriff's Office did not interview during the internal affairs investigation; (4) he was limited to a two minute closing argument; (5) the Appeals Board's hearing lasted only two and one half hours; (6) the five panel members were Sheriff Gibson's employees; and (7) the Appeals Board did not substantively review the record and reasons for Lopez's demotion.

Despite Plaintiff Lopez's complaints, the record shows that the Appeals Board exercised meaningful administrative review over whether to demote and suspend Lopez.  Lopez has not shown that the Appeals Board had defective procedures, rubber-stamped the Sheriff's discipline, or merely ratified the Sheriff's discipline and improper motive.

Plaintiff Lopez has not cited any authority supporting his assertions that the Appeals Board proceeding was defective.  In fact, under the Appeals Board's

26

procedure prescribed by Florida law, Lopez handpicked two of the five panelists, personally testified, introduced evidence, examined witnesses, provided argument at a two-and-a-half-hour final hearing open to the public, and ultimately succeeded in overturning part of the discipline, specifically his 40-hour suspension without pay. See 2000 Fla. Laws, Ch. 2000-388 §§ 3(2)(b), 4(2)(a). Lopez had the right to be heard publicly, to be represented by an individual of his choice (other than an elected or appointed official of Osceola County or an attorney licensed to practice law in Florida), and to present any evidentiary facts in his behalf that were presented during Sheriff Hansell's investigation. See id. § 4(2)(a).

Also, the Appeals Board did not rubber-stamp Sheriff Gibson's discipline or impermissibly ratify either the Sheriff's decision to demote Plaintiff Lopez or the alleged unconstitutional motivation for the Sheriff's decision. Indeed, the Appeals Board found by a majority vote that part of the Sheriff's intended discipline was not sustained, as it overturned the 40-hour suspension without pay. There is no evidence that the Appeals Board's decision approved any alleged improper motive that Sheriff Gibson had for Lopez's demotion. In addition, the Appeals Board's written decision shows that the Appeals Board affirmed Lopez's demotion and overturned his suspension based on its own considered review of the witnesses' testimony and evidence. Despite Lopez's argument that the Appeals Board's decision was based on Sheriff Gibson's interpretation and application of the

27

Sheriff's Office's policies, the Appeals Board made its own detailed findings of fact regarding each one of Lopez's alleged violations and explained what evidence it relied on in making its findings. After making its own fact findings, the Appeals Board considered and applied those facts to Lopez's case and the majority concluded that Lopez violated three of the Sheriff's Office's Standards of Conduct.

## III. CONCLUSION

For all these reasons, the district court properly concluded that the defendant Sheriff Gibson in his official capacity was not a final policymaker with respect to Plaintiff Lopez's demotion, which is necessary to support the municipal liability of Osceola County under § 1983. The district court did not err in granting summary judgment in favor of Sheriff Gibson in his official capacity on Lopez's First Amendment retaliation claim.[7]

**AFFIRMED.**

---

[7]To be clear, nothing herein addresses the merits of Plaintiff Lopez's First Amendment retaliation claim or whether or not the Sheriff's Office's policies—such as forbidding certain derogatory speech and conduct by its employees—violates an employee's First Amendment Rights. Lopez has not challenged the existence of the policies in the first instance.