Sandra Leigh STIMPSON, Plaintiff-Appellee,

v.

CITY OF TUSCALOOSA, J. Russell Gibson, et al., Defendants-Appellants.

Nos. 98-6142, 98-6186.

United States Court of Appeals,

Eleventh Circuit.

Aug. 30, 1999.

Appeals from the United States District Court for the Northern District of Alabama. (No. 95-CV-570-W),
U.W. Clemon, Judge.

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and NANGLE*, Senior District Judge.

PER CURIAM:

The City of Tuscaloosa ("the City") and the Civil Service Board of Tuscaloosa ("the Civil Service

Board") appeal a judgment against them under Title VII for wrongful termination based on sex. They argue

that the district court wrongly denied their motion for a judgement as a matter of law because the plaintiff did

not introduce any evidence that the City's alleged discrimination directly caused her termination. We agree,

and therefore REVERSE.[1]

## I. BACKGROUND

Sandra Stimpson was employed as a police officer by the city of Tuscaloosa since 1975. Over the

course of her employment, she had a troubled disciplinary record. She received various forms of punishments

ranging from reprimands to suspensions, for such transgressions as: giving beer to a prisoner; several

instances of deception, including lying about making secret tape recordings of conversations with a superior

*Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by
designation.

[1]Appellants raise sixteen other grounds for reversal. Because the issue we address is dispositive of the
case, we need not sort out the wheat from the chaff in the other claims of error. Appellee also filed a
cross-appeal in this case, attacking the trial court's decision to grant summary judgement for the Civil Service
Board. In her brief, Stimpson makes this cross appeal contingent on this Court reversing the trial court's
joinder of the Board as a Rule 19 party. Because we do not reverse that ruling, we need not address
Stimpson's cross-appeal.

officer; rudeness to the public; insubordination; several unexcused absences, including at least one while moonlighting; and one instance of threatening to shoot her partner. Despite the repetitive and serious nature of some of these violations, Stimpson was given many chances to improve her behavior.

In September of 1992, Stimpson came to work with her hand and wrist immobilized in a splint. She presented a note from her doctor, Dr. Ikard, stating that she was fit to return to work. After seeing the splint, Stimpson's superiors became concerned that her immobilized hand might hinder her ability to perform some of her official duties safely. Chief Swindle decided that the City needed to verify that Dr. Ikard knew what Stimpson's job duties were and took those duties into account when he deemed her fit to return to work. When Assistant Chief Wilkins contacted Dr. Ikard to clarify these issues, Ikard refused to discuss the matter unless Stimpson signed a medical release. Wilkins next sent Stimpson's sergeant to get her to execute a release, but Stimpson refused to sign. The next day, Wilkins himself requested that she sign the release, but Stimpson again refused. The following day, Wilkins again approached Stimpson. This time he had developed a new "return to work" form that described a patrol officer's job duties and explained that there was no alternative "light-duty" assignment available. He asked Stimpson to return to Dr. Ikard and have him sign the new form. Stimpson refused. He then ordered Stimpson to go to the Emergi-Care clinic to have a different doctor examine her hand and wrist and determine whether she could safely perform her job functions. Faced with suspension if she did not comply, Stimpson went to the clinic.

Stimpson was very agitated when she got to the clinic. According to several witnesses, she raised her voice and used profanities. Some of the witnesses filed complaints and expressed shock that a police officer would behave that way in public, especially in uniform. Once in the doctor's office, she refused to cooperate with the nurse's initial examination and threatened to sue the doctor, Doctor Lovelady, if he contradicted Dr. Ikard's recommendation. After being threatened, Lovelady refused to perform the examination. Later, he called the police department and complained about the incident to Chief Swindle. Stimpson returned to work, telling her supervisor that Lovelady did not examine her and she therefore did

2

not get the return to work form signed. She was then suspended until such a time as she could produce the form signed by a doctor. Only after being suspended did she contact Dr. Ikard and get him to sign the form. After getting the signature, she returned to work with the form and was reinstated.

In October, following an investigation of the Emergi-Care incident by the Tuscaloosa Police Department, Stimpson was suspended with pay. Based on her behavior at Emergi-Care coupled with her history of disciplinary problems, Chief Swindle recommended that she be terminated. Under Alabama state law, the City of Tuscaloosa has no power to unilaterally fire a police officer. Instead, Alabama has created a Civil Service Board of Tuscaloosa, whose members are appointed by the Governor of Alabama. The Board, alone, has the power to terminate a police officer. Chief Swindle informed Stimpson that he intended to recommend her discharge to the Board. He offered her the chance to resign instead, as he testified he had done with all of the other officers he had intended to refer to the Board for discharge. She refused to resign, and so Swindle instituted proceedings before the Civil Service Board. The Board, which at the time consisted of two men and one woman, held a three-day hearing in January of 1993. Stimpson was represented by counsel at this hearing and put on witnesses in her defense. On January 8, 1993, the Civil Service Board unanimously decided to terminate Stimpson based on her conduct surrounding the Emergi-Care incident, after also considering some of the most recent and egregious misconduct in her disciplinary record.

In April of 1993, Stimpson filed a charge with the EEOC, alleging discriminatory discharge based on sex and age against the City of Tuscaloosa. After receiving a right to sue letter from the EEOC, Stimpson filed suit in the Northern District of Alabama under Title VII and the ADEA. She eventually added counts under 42 U.S.C. § 1983 against Swindle and Wilkins and added the members of the Civil Service Board as defendants in their official capacity. Before trial, the § 1983 claims were dropped and the Civil Service Board's motion for summary judgement was granted. The Board was subsequently reintroduced as a Rule 19 defendant because it would be needed procedurally if reinstatement was granted to Stimpson, but the Board was no longer a defendant for liability purposes.

3

Prior to the introduction of evidence at trial, Stimpson voluntarily dismissed her age discrimination claim. Before and at trial, Stimpson's case was based on trying to show that the City's decision to recommend her termination was the discriminatory adverse employment action. At no time did Stimpson ever introduce any evidence or even make a concrete allegation that the Board's decision to terminate her was based on her sex. The City moved for judgment as a matter of law on several grounds, including that it had not actually terminated Stimpson, and that she had not proven that the decision to terminate her, made by the Board, was based on sex. Following the district court's denial of the motion, the jury returned a verdict in favor of Stimpson. The court's final judgement ordered her reinstatement and awarded her $300,000 damages plus back pay and attorneys fees. Appellants filed timely notice of appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review denial of a motion for judgment as a matter of law *de novo,* using the same legal standard as the district court. *Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993). Under this standard, we must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. DISCUSSION

Appellants argue that Stimpson failed to produce any evidence that the Civil Service Board's decision to terminate her was based on sex. Stimpson contends that the motivation of the Board is irrelevant, and that the City's recommendation that she be terminated is actionable in and of itself. We disagree. Title VII prohibits the discharge of an employee, or other discrimination with respect to terms and conditions of a person's employment, based on the employee's sex. 42 U.S.C. § 2000(e)-2(a)(1). In order to prove intentional discrimination under this section, a plaintiff must establish (1) the employer's discriminatory animus towards the employee based on the employee's protected characteristic; (2) a discharge or other significant change in the terms or conditions of employment; and (3) a causal link between the two. *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236 (11th Cir.1998). In this case, there is no question that

4

Stimpson was discharged. Although we have grave reservations about the disparate treatment evidence presented by Stimpson, we need not address that issue because even assuming, *arguendo,* that she introduced sufficient evidence to allow a reasonable jury to find discriminatory animus on the part of the City, the causal link between that animus and her termination is broken by the Board's hearing and independent decision to actually terminate her.

We note at the outset that under Alabama law, the City has no power to terminate police officers such as Stimpson. Under Act No. 249 of the Alabama legislature, 1947 Ala. Acts 174, only the Civil Service Board has the power to do so. The Board has the discretion to terminate, give a lesser form of punishment to, or entirely vindicate a police officer brought before it. Consequently, the City's recommendation that the Board terminate Stimpson does not, itself, constitute a change in the terms or conditions of employment absent a sufficient causal link between the termination and the discriminatory animus behind the recommendation.

We have previously stated the general proposition that in some cases, a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge. *Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291, 294 (11th Cir.1988). However, as we have recently explained, this causation must be truly direct. When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity. Instead, the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee. *Llampallas,* 163 F.3d at 1248.

One way of proving that the discriminatory animus behind the recommendation caused the discharge is under the "cat's paw" theory. This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the

5

complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus. *Id.* at 1249.

In this case, Stimpson has not introduced any evidence that could reasonably indicate that the City's alleged discriminatory animus influenced the Board's decision to terminate her. Furthermore, she has not introduced any evidence to show that the Board acted as a "cat's paw" or rubber stamp for the City's recommendation. To the contrary, the evidence shows that the Board has the sole power and discretion to terminate police officers, that its members are appointed by the Governor of Alabama, that it conducted a three day hearing to investigate the charges, and that during the hearing Stimpson was represented by legal counsel and was allowed to put on defense evidence and witnesses.[2] It is hard to imagine any other procedural device that would ensure a more fair and independent decision than that of the Civil Service Board. We need not announce a bright line at which an independent investigation becomes a rubber stamp to resolve this case, because the record before us does not contain any hint of a cat's paw arrangement. Consequently, we hold that Stimpson has failed to produce sufficient evidence to allow a reasonable jury to find causation between the City's alleged discriminatory animus and the Board's decision to terminate her. We VACATE the district court's Order of Final Judgment and Permanent Injunction and REMAND with instructions to enter judgment for appellants, consistent with this opinion.

---

[2]We curiously note that Stimpson apparently never mentioned any discriminatory motive behind the charges at her hearing before the Civil Service Board. It seems like that would have been an ideal time and place to do so.