[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15684
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-02737-JCF

THANOUSINH SOULINTHONG,

Plaintiff-Appellant,

versus

TRUSTPOINT INTERNATIONAL, LLC,

Defendant,

EXCELERATE DISCOVERY, LLC,
d.b.a.
TrustPoint International, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 13, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, and WILLIAM PRYOR, Circuit
Judges.

PER CURIAM:

Thanousinh Soulinthong, a female of Laotian and Chinese heritage, sued her former employer, TrustPoint International, for, among other things, retaliation and race, national origin, and gender discrimination under Title VII, 42 U.S.C. §§ 2000e-2, 3, and 42 U.S.C. § 1981. The district court granted summary judgment to TrustPoint on those claims.[1] This is Soulinthong's appeal.

## I.

Soulinthong began working for TrustPoint in July 2012, when Todd Tabor hired her as a Director of e-Discovery Client Solutions.[2] She was assigned a cubicle workspace, and after requesting and being denied an office and a company cell phone, she met with human resources manager Rachel Watters in early August to discuss those and other workplace concerns. During that meeting with Watters, Soulinthong indicated that she believed that she was receiving poor treatment based on her gender and ethnicity.

At some point during her employment, Soulinthong and Tabor were discussing hunting, and Soulinthong commented that people in her culture do not hunt for sport, and Tabor replied "why can't you be more like us." And one

---

[1] In the district court, the parties consented to a magistrate judge's authority to conduct all proceedings. We refer to the magistrate judge as the district court.

[2] The following "facts" are taken from the record at summary judgment, construing the evidence in the light most favorable to Soulinthong, the nonmoving party. See Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1240 (11th Cir. 2004). We realize that they may not be the true facts but we treat them as though they are for present purposes.

evening when Soulinthong was eating rice wrapped in seaweed for dinner, Tabor saw her meal and asked "why do you have to be so weird?" which Soulinthong believed was meant to highlight her cultural differences.

In late September 2012 a problem with one of Soulinthong's paychecks arose. Although it is unclear what exactly happened, Soulinthong was issued a check that the payroll manager, Jackie Jordan, did not know had been issued. Jordan realized that the check was missing from her office, believed that it had been stolen, and ordered a stop-payment on the check. When Soulinthong learned that the check had been cancelled, she emailed Watters, Tabor, and Mike Hawn, TrustPoint's CEO, to complain, stating that "I need it remedied today . . . before I can go forward with any work." Tabor, after rejecting Watters and TrustPoint's CFO's suggestion that he terminate Soulinthong, met with her to discuss the paycheck issue and to issue a verbal warning about her "disruptive" and "unprofessional" response to the incident. Tabor also directed Soulinthong to stop copying CEO Hawn on her emails. During that meeting, Soulinthong asked why her picture was not included on the TrustPoint website, and Tabor responded that no one would expect someone of Soulinthong's "coloring" to be on the webpage.

A few days later, on November 2, Soulinthong sent a sarcastic and disrespectful email to Watters after Watters could not confirm that an envelope carrying Soulinthong's paycheck had been postmarked by a certain date. Later that

month, TrustPoint sent Soulinthong the calculation of amount she was owed as her yearly bonus and, disagreeing with that calculation, Soulinthong emailed Tabor, Hawn, and others to point out the problem in a tone that Tabor found disrespectful. And on November 26, after Tabor told Soulinthong to check with other members working on a large project about her planned vacation dates, Soulinthong responded by telling Tabor that those members "are not my supervisors" and were not required to check their vacation dates with her, and she did not "see what they would offer." Soulinthong again copied Hawn on that email. After consulting with Watters and TrustPoint's CFO, Tabor decided to fire Soulinthong on November 28, 2012.

Soulinthong sued TrustPoint for national origin and gender discrimination in violation of Title VII, race discrimination and retaliation in violation of Title VII and § 1981, state law breach of contract, and state law breach of the duty of good faith. TrustPoint moved for summary judgment, and the district court granted that motion as to Soulinthong's federal claims and dismissed without prejudice her state law claims. This is Soulinthong's appeal of the district court's entry of summary judgment on her federal claims.

## II.

We review de novo the district court's grant of summary judgment. Hulsey, 367 F.3d at 1243. Under Title VII an employer is prohibited from discriminating

4

"against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[3] A plaintiff can overcome summary judgment with direct evidence of discrimination or through the use of circumstantial evidence under the burden shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981). Under that framework the plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824. If the plaintiff makes that showing, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Burdine, 450 U.S. at 252, 101 S. Ct. at 1093.

TrustPoint contends that Soulinthong has failed to establish a prima facie case of discrimination on her race, national origin, and gender discrimination claims. We need not decide that issue because even if Soulinthong established a

---

[3] The framework governing Soulinthong's Title VII claims also governs her § 1981 claims, and the analysis of her § 1981 claims is subsumed in this analysis of her Title VII claims. See Standard v. A.B.E.B. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

5

prima facie case, summary judgment on those claims was proper because she failed to establish pretext.

TrustPoint's asserted legitimate nondiscriminatory reasons for firing Soulinthong were that she acted in an unprofessional, disrespectful, and insubordinate manner toward other TrustPoint employees.  As a result, the burden shifts back to Soulinthong who must "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of [TrustPoint]'s articulated reasons is pretextual."  Chapman v. AI Transp., 229 F.3d 1012, 1024–25 (11th Cir. 2000) (en banc).  Soulinthong can satisfy that burden "either by offering evidence that [TrustPoint] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible, unless the record conclusively shows that the real motive was a non-proffered reason that is non-discriminatory."  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010).

Soulinthong contends that Tabor's comments are significant evidence of pretext for race and national origin discrimination.[4]  See Rojas v. Florida, 285 F.3d 1339, 1342–43 (11th Cir. 2002) ("[C]omments [showing some animus toward a protected trait] can contribute to a circumstantial case for pretext.") (emphasis

---

[4]  Soulinthong also contends that the district court erred by (1) considering inadmissible evidence of an earlier settlement demand made upon TrustPoint, and (2) relying on the fact that Tabor both hired and fired her in a short period of time to find "an inference against pretext" at summary judgment.  We need not decide those issues because, even if we do not consider that evidence and inference, she has nevertheless failed to raise a genuine issue of fact as to her Title VII and § 1981 claims.

6

omitted).  Specifically, she points to Tabor's comments about her food and "coloring" and his response to her comment that in her culture people didn't hunt for sport.  Soulinthong contends that those comments demonstrate Tabor's racial bias, which in turn is evidence that the reasons given for her termination were pretextual.

It appears from Soulinthong's deposition testimony that the food and hunting comments were made before Tabor, against the recommendations that Soulinthong be fired, decided to retain Soulinthong and to instead issue a verbal warning.  And the "coloring" comment was made during the meeting where Tabor issued the verbal warning, despite Watters' and the CFO's recommendations that he fire her.  As a result, Tabor's comments do not demonstrate that he more likely than not acted with a discriminatory motive when he finally did fire Soulinthong after she continued to copy TrustPoint's CEO onto emails and continued to treat other TrustPoint employees in a sarcastic and disrespectful manner.[5]

Similarly, Soulinthong has failed to offer evidence showing that TrustPoint's proffered reasons for terminating her were a pretext for gender discrimination.  The

---

[5]  Soulinthong also contends that Jordan made discriminatory and racist comments. Jordan, who had cancelled Soulinthong's paycheck, told Tabor that Soulinthong had stolen that check.  Soulinthong contends that Jordan's behavior with respect to the paycheck incident shows that her termination was pretextual.  But Soulinthong was not fired based on her behavior leading up to the paycheck incident or her response to her check being cancelled.  Instead, her termination was based on her behavior after that incident.  As a result, Jordan's comments and role in the paycheck incident are not relevant to the issue of pretext because that incident had no bearing on Tabor's ultimate decision to fire Soulinthong.

7

only evidence Soulinthong points to as supporting her gender discrimination claim is project manager Killian Connolly's comment in an email that John Palumbo, a male with less seniority than Soulinthong, needed to be the "man on the ground" when it came to a specific client.  Connolly's email with the "man on the ground" comment addressed that the work for that client "is going to be very interactive and needs to be done in person," which went to the fact that Palumbo was based in Boston, where the client was located, while Soulinthong was based in Atlanta. See Ash v. Tyson Foods, Inc., 546 U.S. 454, 456, 126 S. Ct. 1195, 1197 (2006) (noting that a speaker's meaning, and whether it is evidence of discriminatory animus "may depend on various factors including context").  Soulinthong has failed to offer evidence sufficient to create a genuine issue that TrustPoint's reasons for firing her were a pretext for gender discrimination.

Soulinthong also contends that the district court erred in granting summary judgment to TrustPoint on her retaliation claims, which she based on her having complained to Watters early on in her employment about discriminatory treatment and then having been fired.  Like Soulinthong's Title VII and § 1981 claims, the McDonnell Douglas burden shifting framework applies to Soulinthong's retaliation claims, which rely on circumstantial evidence.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  To establish a prima facie case of retaliation, Soulinthong must show (1) that she "engaged in a statutorily protected

activity," (2) that she "suffered an adverse employment action," and (3) "a causal link between the protected activity and the adverse action." Id. (quotation marks omitted). To establish the causal link, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quotation marks omitted).

If the plaintiff cannot show that the decision maker knew of the protected conduct, she may still be able to establish a prima facie case under the cat's paw theory of liability. Under that theory, Soulinthong may establish causation by showing that Tabor followed the biased recommendation of an employee with discriminatory animus without independently investigating the basis for the recommendation. See Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999). Soulinthong contends that she can establish a prima facie case under the cat's paw theory because, even though no evidence shows that Tabor knew she had complained about discriminatory treatment, Watters (whom Soulinthong complained to) caused her termination.

While Tabor consulted with Watters about whether termination was appropriate, Tabor made the final decision to terminate Soulinthong, and he did so after overruling Watters' earlier recommendation that he fire her based on the paycheck incident. As a result, Tabor did more than "rubber stamp" any

9

recommendation Watters made to terminate Soulinthong. The evidence shows that he instead independently investigated the problems leading up to Soulinthong's termination. Because Soulinthong has failed to establish a causal link between her complaint and her termination, summary judgment to TrustPoint on her retaliation claims was proper.[6]

   **AFFIRMED.**

---

[6] Soulinthong also asserted state law contract claims against TrustPoint. The district court in its summary judgment order dismissed those claims without prejudice, and Soulinthong does not challenge the dismissal of those claims.