[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11458
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-14521-JEM

DANIEL GILROY,

Plaintiff-Appellant,

versus

R. SEAN BALDWIN,
individually,
CITY OF FORT PIERCE, a Florida municipal
corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 29, 2021)

Before LAGOA, BRASHER and MARCUS, Circuit Judges.

PER CURIAM:

Daniel Gilroy appeals the district court's grant of summary judgment in favor

of the City of Fort Pierce ("the City) and its former police chief, R. Sean Baldwin,

on his 42 U.S.C. § 1983 claim that he was terminated from his position as a police

officer in retaliation for exercising his First Amendment rights to speech and association. Gilroy argues that the district court: (1) erred in deciding that he could not show either that Baldwin was a decisionmaker subject to individual liability nor that City Manager Robert Bradshaw and the City's Civil Service Appeals Board ("the Board") were Baldwin's cat's paws; (2) erred in concluding that he could not show that the City was subject to municipal liability under a policy or custom theory; and (3) abused its discretion in declining to exercise supplemental jurisdiction over his state-law claim. After thorough review, we affirm.

We review a district court grant of summary judgment de novo, viewing all evidence and making all reasonable inferences in favor of the nonmovant. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute exists where a reasonable factfinder could find by a preponderance of the evidence that the nonmovant is entitled to a verdict. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012). We review a district court's refusal to exercise supplemental jurisdiction for abuse of discretion. Amergi v. The Palestinian Authority, 611 F.3d 1350, 1356 (11th Cir. 2010).

First, we are unpersuaded by Gilroy's argument that the district court erred in granting summary judgment on his First Amendment retaliation claim to the former

2

police chief. Any person who, under color of law, deprives any citizen of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured. 42 U.S.C. § 1983. The state may not discharge or demote a public employee in retaliation for speech protected by the First Amendment. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). A public employee's First Amendment right to associate receives the same protection. D'Angelo v. Sch. Bd. of Polk Cnty., Fla., 497 F.3d 1203, 1212 (11th Cir. 2007). An employee raising a First Amendment retaliation claim must show by a preponderance of the evidence that: (1) his speech is on a matter of public concern; (2) his First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting it; and (3) his speech played a substantial part in the employer's decision to demote or discharge. Battle v. Bd. of Regents, 468 F.3d 755, 759-60 (11th Cir. 2006).

Independent of municipal liability, a decisionmaker inquiry "addresses who has the power to make official decisions and, thus, be held individually liable" under § 1983. Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003). An official or formal decisionmaker may, in the case of public employers, be identified "by examining the statutory authority of the official alleged to have made the decision." Id. at 1328. We've explained that a defendant is a decisionmaker subject to individual liability when he has the authority "not merely to recommend" the plaintiff's termination, "but to immediately effectuate" it. Id. (quotation omitted).

3

At times, a discharge recommendation by a party without actual power to discharge an employee may be actionable if the plaintiff proves the recommendation "directly resulted in the employee's discharge." Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999). But this causation must be "truly direct" -- the plaintiff "must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." Id.

One way of proving that the discriminatory animus behind a recommendation caused a discharge is under the cat's paw theory, which provides that a plaintiff may establish causation by showing that the decisionmaker followed a biased recommendation without independently investigating the complaint against the employee. Id. at 1332 (recognizing the cat's paw theory in the context of Title VII). We've held that a plaintiff police officer failed to introduce any evidence showing cat's paw liability where the decisionmaking entity, in that case, a civil service board: (1) had the "sole power and discretion to terminate police officers"; and (2) conducted "a three day hearing to investigate the charges" where the plaintiff "was represented by legal counsel and was allowed to put on defense evidence and witnesses." Id. We noted that it was "hard to imagine any other procedural device that would ensure a more fair and independent decision." Id.

4

Florida law provides that a municipality must have a proposed municipal charter that, among other things, prescribes the form of government and clearly defines responsibility for legislative and executive functions.    Fla. Stat. § 165.061(1)(e)(1).  The City of Fort Pierce's Charter provides that the City Manager: (1) exercises "general supervision and control over all city departments, except the office of city clerk, city attorney and city auditor"; and (2) has the power to remove or suspend "all officers and employees" of the City except as otherwise provided by the Charter or where the City Manager has authorized the head of a department or office to do so.  Fort Pierce, Fla., Code § 42(c) (2020).  The Charter also establishes a "civil service appeals board."  Id., § 82(a).  The Board, among other things, must "provide rules for the procedures and grounds for . . . dismissal of employees" and hear appeals of any person in the classified service who is dismissed.  Id. § 85(c)-(d).  In the event of an appeal, the Board "shall conduct [a] hearing" in which "the affected employees and the city manager shall be given full opportunity to be heard in person or with counsel."  Id. § 90(h).  The "[B]oard's findings and its decision [] shall be final" and "transmitted to the city manager and executed by him."  Id.

Here, the district court did not err in concluding, for purposes of summary judgment, that Baldwin, the former police chief, was not the decisionmaker who could effectuate Gilroy's termination.  Indeed, the only person authorized by statute to terminate City employees was the City Manager, Robert Bradshaw.  See Quinn,

5

330 F.3d at 1328; Fort Pierce, Fla., Code § 42(c).  Gilroy has pointed to no record evidence to refute that statutory framework or to refute Baldwin's interrogatory testimony that the City Manager made the initial decision to terminate Gilroy and that Baldwin merely recommended that Gilroy be terminated.

As for the cat's paw theory -- assuming arguendo that it applies in the § 1983 context -- Gilroy also could not show that City Manager Bradshaw was Baldwin's cat's paw.  Indeed, Gilroy has provided no evidence about Bradshaw's decision at all, much less that Baldwin's animus was its direct cause. Stimpson, 186 F.3d at 1331. Likewise, Gilroy could not show that the Board was Baldwin's cat's paw because its proceedings were almost identical to those in Stimpson: a three-day hearing in which Gilroy was represented by legal counsel and allowed to present evidence and witnesses in his defense. Id. at 1332.  Further, Gilroy fails to attribute any retaliatory animus to the Board.

In short, we see no genuine issue of material fact that Baldwin was not liable individually as a decisionmaker or that Bradshaw and the Board were not Baldwin's cat's paws.  Thus, the court did not err in granting summary judgment to Baldwin.

We also find no merit to Gilroy's claim that the district court erred in granting summary judgment to the City under Gilroy's policy theory.  A municipality may be sued under § 1983 when execution of a government's "policy or custom" inflicts the injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Municipal liability

6

may arise in the termination context "provided that the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Quinn, 330 F.3d at 1325 (quotations and emphases omitted). Municipal liability under § 1983 is precluded when "the final policymaker delegates decisionmaking discretion" to a subordinate "but retains the power to review the exercise of that discretion"; thus, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." Id. (quotations omitted). We've noted, in concluding that a decisionmaker was not a policymaker, that a reviewing council had the power "to reverse any termination decision made by" the decisionmaker and that the plaintiff failed to "provide[] evidence" that the policymaking body "approved any improper motive" that the decisionmaker may have had. Id. at 1326.

We've also held that two decisionmakers were not final policymakers where, in relevant part, a city's "governing documents provide[d] employees with an opportunity for meaningful administrative review of termination decisions" with the city's civil service board, and there was "no evidence that the [b]oard merely rubber-stamps the decisions of the appointing authorities." Scala v. City of Winter Park, 116 F.3d 1396, 1402 (11th Cir. 1997). There, the plaintiff's own prior experience cut against his contrary argument "because [he] was able to convince the [b]oard to reverse the demotion he had received in an earlier disciplinary proceeding." Id. On

7

this basis, we affirmed the grant of summary judgment in the city's favor because there was no evidence, and the plaintiff did not allege, that the board "approved any improper motive" the decisionmakers may have had. Id. at 1403.

In this case, the district court did not err in holding that Gilroy could not establish municipal liability under a policy theory. As the undisputed record reveals, Baldwin was not the policymaker who could effectuate Gilroy's termination, since the Board had the statutory authority to reverse any decision like that. See Monell, 436 U.S. at 694; Quinn, 330 F.3d at 1325-26; Fort Pierce, Fla., Code § 90(h). Thus, the Board was the final policymaker, and Gilroy could not attribute to it any retaliatory animus; indeed, he affirmatively said he knew nothing about any Board members or whether any of them even knew of his speech or association. See Scala, 116 F.3d at 1402; see also Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996) (explaining that, even if a policymaker approved a decisionmaker's actions, and those actions were based on improper motives, the city would not be liable because the plaintiff presented no evidence that the policymaker approved of those improper motives). It is also undisputed that Baldwin, the person to whom Gilroy does attribute retaliatory animus, had nothing to do with selecting the Board members. And Gilroy's arguments that the Board was not the policymaker because it merely rubberstamped Baldwin's purported decision is undermined by his own experience -- the Board voted in his favor on only one of the two grounds for termination it

8

reviewed. Accordingly, there is no genuine issue of material fact that Gilroy could not establish municipal liability under a policy theory, and we affirm the district court's grant of summary judgment on this issue.

Similarly, we are unconvinced by Gilroy's claim that the district court erred in granting summary judgment to the City under Gilroy's custom theory. A plaintiff may prove the existence of a custom by proving the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991). The plaintiff must show that the municipality's governing body had "actual or constructive knowledge" of "a persistent and wide-spread practice." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). "[R]andom acts or isolated incidents are insufficient to establish a custom or policy." Id.

As the record reflects, the district court did not err in finding that Gilroy could not establish municipal liability under a custom theory because he presented no evidence that any policymaker had actual or constructive knowledge of any of Baldwin's purportedly anti-union behavior beyond an isolated incident. See Monell,

9

436 U.S. at 694; <u>Depew</u>, 787 F.2d at 1499; <u>Brown</u>, 923 F.2d at 1481.  In the one incident Gilroy points to, Baldwin threatened to fire Gilroy during a meeting with a city manager because Gilroy would not sign off on a furlough for all police officers. However, Gilroy did not present any evidence that this meeting was more than an isolated incident, nor that Baldwin's anti-union animus was so permanent and well settled that it had the force of law.  <u>See</u> <u>Praprotnik</u>, 485 U.S. at 127.  On this record, there is no genuine issue of material fact that Gilroy could not establish municipal liability under a custom theory.  <u>See</u> Fed. R. Civ. P. 56(a); <u>Monell</u>, 436 U.S. at 694. We affirm as to this issue as well.

Finally, we cannot conclude that the district court abused its discretion in declining to exercise supplemental jurisdiction over Gilroy's state-law claim that the Board was improperly constituted under Fla. Stat. § 286.011.  District courts have supplemental jurisdiction over claims forming part of the same case or controversy as those falling within its original jurisdiction.  28 U.S.C. § 1367(a).  However, a district court may decline to exercise supplemental jurisdiction if, in relevant part, "the district court has dismissed all claims over which it has original jurisdiction." <u>Id</u>. § 1367(c)(3).  In this event, courts may also consider additional factors, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together.  <u>Amergi</u>, 611 F.3d at 1366.

10

Here, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Gilroy's state-law claim because, as we've held, it properly dismissed all the claims over which it had original jurisdiction. Therefore, it was entitled to refuse supplemental jurisdiction over the state-law claim as the only one remaining. Gilroy presents no argument that a contrary finding would be more economic, convenient, or fair. See 28 U.S.C. § 1367(c)(3); Amergi, 611 F.3d at 1366. Accordingly, we affirm the district court's decision in full.[1]

**AFFIRMED**.

---

[1] While Gilroy has raised challenges to the proceedings before the Board, they are not relevant to the municipal liability inquiry; instead, they are the same as those he raised in support of his Florida law claim for deprivation of property without due process. Notably, however, he does not raise arguments about the district court's dismissal of that claim on appeal and has abandoned the argument. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Further, his arguments about the Board's composition are relevant only to his claim under Fla. Stat. § 286.011, which, as we've held, the district court properly dismissed.