[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12297
Non-Argument Calendar
_____

D.C. Docket No. 5:19-cv-00032-TES

KYM HOLLEY,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF CORRECTIONS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 12, 2021)

Before WILSON, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Kym Holley—an African-American man—appeals the district court's order granting summary judgment in favor of the Georgia Department of Corrections (DOC) with respect to his race-discrimination claim under Title VII of the Civil Rights Act of 1964, filed after the DOC rescinded his job offer and instead hired a white woman.

The facts are known to the parties, so we will briefly repeat them here only to the extent necessary to resolve the issues presented. Holley applied for an open "Instructor 2" position with the DOC's Burruss Correctional Training Center in Forsyth, Georgia. Warden Benjamin Ford—also an African-American man— interviewed Holley and later called to offer him the position. Ford did not see Holley's criminal-history report before doing so. But just a few days later, Ford was transferred to a different prison and James Payne—a white man—was promoted to be the new warden at Burruss. The following week, Holley went to Burruss to attend a new-hire orientation and to complete some paperwork— including a State of Georgia Loyalty Oath/State Security Questionnaire in which he disclosed a prior conviction of fleeing and eluding an officer. Shortly thereafter, Gail Holder, an HR manager at Burruss, received Holley's criminal-history report—which (in addition to the prior conviction Holley had disclosed) incorrectly indicated that he had been sentenced to five months' probation in 1992. Holder provided Holley's criminal-history report to Payne. Payne judged that the

2

nature of Holley's conviction—fleeing and eluding a police officer—showed that Holley did not meet the DOC's standards for employment. In addition, at the time, Payne attested, the DOC had a leadership directive in place requiring that applicants with any type of probation in their records not be hired. Holder contacted Holley to inform him that his job offer was being rescinded because prison policy prohibited hiring individuals with a record of probation. Holley disputed that he had ever been on probation, but he was not given the usual opportunity to formally respond to the content of the criminal background report. The DOC subsequently promoted Georgia Franklin—a white woman and an established part-time employee at Burruss—to fill the position. As it turns out, Franklin had actually been on probation—after she was initially hired for her part-time position, but before her promotion—but Payne was not aware of Franklin's probation history until this lawsuit was filed.

Holley brought this lawsuit alleging, in relevant part, that the DOC discriminated against him on the basis of his race. The district court granted the DOC's motion for summary judgment, and Holley appealed.

Holley makes three arguments on appeal. First, he argues that the district court erred by finding that he had not presented a similarly situated comparator because, he says, he had presented sufficient evidence that Franklin—the white woman who was ultimately hired—was "similarly situated [to him] in all material

3

respects" under the standard established in *Lewis v. City of Union City*, 918 F.3d

1213, 1218 (11th Cir. 2019) (en banc).  Second, Holley asserts that the district

court erred by rejecting his "cat's paw" argument because—as he sees it—the facts

construed in his favor show that the decisionmaker didn't conduct an independent

investigation and that the hiring process revealed an intent to discriminate.  Finally,

Holley contends that the district court erred in concluding that he failed to show a

convincing mosaic of circumstantial evidence from which a reasonable jury could

infer that the DOC acted with discriminatory intent.  After careful review, we

affirm.[1]

## I

Title VII prohibits employers from refusing to hire, or otherwise

discriminating against, an individual because of his race.  42 U.S.C. § 2000e-

2(a)(1).  Where the plaintiff supports his Title VII claim with circumstantial

evidence, we apply the burden-shifting framework set out in *McDonnell Douglas*

---

[1] We review *de novo* a district court's grant of summary judgment, using the same legal standards applied by the district court.  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant.  *Alvarez*, 610 F.3d at 1263–64.  When a movant has shown that no genuine dispute of material fact exists, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact that precludes summary judgment.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The non-movant must go beyond the pleadings and present competent evidence setting forth specific facts to show that a genuine issue exists.  *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

*Corp. v. Green*, 411 U.S. 792 (1973). *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010). The plaintiff bears the initial burden of presenting evidence sufficient to establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.

A *prima facie* discrimination claim under Title VII generally requires a plaintiff to show (1) that he is a member of a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified for the job, and (4) that his employer treated similarly situated employees outside the protected class more favorably. *Lewis*, 918 F.3d at 1220–21. To meet the fourth prong, a comparator must be "similarly situated in all material respects," meaning that the plaintiff and comparators are "sufficiently similar, in an objective sense, that they cannot reasonably be distinguished." *Id.* at 1218, 1228 (quotation marks omitted). Although the similarly-situated standard requires a case-by-case analysis, a similarly situated comparator will ordinarily have engaged in the same basic misconduct as the plaintiff (if applicable); have been subject to the same employment policy, guideline, or rule; shared the same supervisor; and shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28. But importantly here, a proffered comparator's misconduct is relevant only if the decisionmaker knew about it. *Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989). A plaintiff's failure to produce evidence showing that a single similarly situated

5

employee was treated more favorably precludes the establishment of a *prima facie* case. *Lewis*, 918 F.3d at 1224.

The district court did not err in concluding that Holley failed to establish a *prima facie* case for race discrimination. Holley and Franklin were similarly situated to the extent that they worked for the same employer and were subject to the same employment policy. *See id.* at 1227–28. But their Georgia Crime Information Center (GCIC) reports—the records that the warden relied on in making his hiring decisions—did not show similarly situated candidates. Instead, the reports showed, albeit incorrectly, that Holley had been on probation and that Franklin had not. Therefore, Holley and Franklin were not sufficiently similar, in an objective sense. *See id.* at 1228. The fact that Franklin actually *had* been on probation is irrelevant because it's undisputed that Payne wasn't aware of it when he made the decision to promote Franklin to the position initially offered to Holley.[2] *See Jones*, 874 F.2d at 1542. Accordingly, we affirm as to this issue.

## II

When a claim involves an adverse employment action that occurs based on a biased recommendation by a party without decision-making authority, a plaintiff

---

[2] To the extent that Holley argues that the district court relied on inapposite or outdated cases, the court used the correct comparator standard from *Lewis*, and no case has overturned the principle from *Jones* that a proffered comparator's misconduct is relevant only if the decisionmaker knew about it. And Holley cites no authority for the proposition that he can establish a valid comparator by showing that Payne *could have* become aware of Franklin's probation through Holder.

can establish liability under the cat's paw theory. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331–32 (11th Cir. 1999). Under that theory, if the decisionmaker followed the biased recommendation without independent investigation—essentially rubber-stamping the biased recommendation—then the recommender's discriminatory animus is imputed to the decisionmaker. *See id.* at 1332. We have noted, in the Title VII context, that when an employer makes an effort to independently investigate before making an adverse employment decision, it should not be held liable for another employee's hidden discriminatory motives. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249–50 (11th Cir. 1998).

In *Staub v. Proctor Hospital*, the Supreme Court, in addressing a discrimination claim under the Uniformed Services Employment and Reemployment Rights Act, concluded that an independent investigation did not relieve an employer of fault. 562 U.S. 411, 416 (2011). Instead, the Court held that discriminatory animus may be imputed to a neutral decisionmaker under a cat's paw theory if (1) a supervisor performed an act motivated by animus that was intended to cause an adverse employment action and (2) the act was a proximate cause of the adverse employment action. *Id.* at 422. Nonetheless, the Court explained that there is no proximate cause—and therefore can be no liability—if the adverse action is entirely justified apart from the biased supervisor's recommendation. *Id.* at 421–22

7

Here, the district court did not err by finding that Holley failed to create a factual issue as to liability under a cat's paw theory. Assuming that *Staub* established agency principles that constituted a lower burden for plaintiffs in establishing cat's paw, Holley still cannot satisfy its standard. *See Staub*, 562 U.S. at 422. Holder couldn't have provided a biased recommendation because that was not her role in the hiring process—she simply gave the warden the GCIC reports, which she had no hand in creating. Thus, Payne's rescission of Holley's job offer was justified based on Holley's actual criminal history and was entirely separate from any action by Holder. *See id.* at 421–22. Moreover, Holder's action in refusing to allow Holley to dispute his GCIC report does not create a genuine issue because it shows only that Payne had already made his decision, not that Holder's conduct somehow caused Payne's decision to rescind Holley's job offer.

Significantly, it is undisputed that Holder learned about Franklin's probation after Payne decided to hire her. And Holley provided no evidence that Holder's actions were motivated by a discriminatory animus and were intended to cause an adverse employment action, which precludes cat's paw liability even under *Staub*. *See id.* at 422. Accordingly, we also affirm as to this issue.

### III

As an alternative to the *McDonnell Douglas* burden-shifting test, a plaintiff can survive summary judgment by presenting circumstantial evidence that creates

8

a triable issue concerning the employer's discriminatory intent. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Such "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation marks and footnote omitted). A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext. *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). Notably, a supervisor is entitled to enforce policies that his predecessors did not consider important. *See Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002).

The district court did not err by finding that Holley failed to create a triable issue concerning a convincing mosaic of race discrimination. Viewing the record in the light most favorable to Holley, he did not present a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional race discrimination in the decision to rescind his job offer. *See Smith*, 644 F.3d at 1328. He did not present evidence that the DOC acted arbitrarily, nor did he cast sufficient doubt on the DOC's proffered nondiscriminatory reasons. *See Lewis*, 934 F.3d at 1185–86. Objective evidence—Holley's actual criminal record—

9

supported the DOC's proffered reasons for rescinding his job offer. Holley's other arguments—which hinge on vague details about the DOC's policy against hiring people with probationary records and the different hiring decisions made by Wardens Ford and Payne—also fail. Ford testified he didn't know about Holley's (supposed) probation, and supervisors have discretion to enforce particular practices and standards of behavior. *See Rojas*, 285 F.3d at 1343. While the DOC's refusal to allow Holley to dispute his GCIC report clearly violated its own policy, it doesn't provide evidence that the DOC's proffered reason for rescinding the offer was pretextual. That is so because Holley did in fact have a criminal record that Payne believed fell below DOC standards. Accordingly, we affirm as to this issue and affirm the district court's entry of summary judgment for the DOC.

## IV

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**